Application of David K. BULLOCH and
Hong Zoon Kim.

Appeal No. 78–626.

United States Court of Customs
and Patent Appeals.

Sept. 6, 1979.

Rehearing Denied Nov. 29, 1979.

Bertram Ottinger, New York City, attorney of record, for appellants.

Joseph F. Nakamura, Washington, D.C., for Com'r of Patents; Gerald H. Bjorge, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and KASHIWA,* Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") affirming the rejection under 35 U.S.C. §§ 102(g)/103 of claims 6 and 7 of application serial No. 335,343.[1] We reverse.

## BACKGROUND

### The Invention

The invention relates to concentrates (aqueous solutions) for developing photographic color film. N,N-disubstituted p-phenylenediamines, particularly 4–amino-N-ethyl, N-β-methane sulfonamidoethyl-m-toluidine ("AEMT"), have gained wide ac-

---

* The Honorable Shiro Kashiwa, United States Court of Claims, sitting by designation.

1. The application is entitled "N,N,disubstituted p-phenylenediamine phosphates, a Liquid Packaged Developer Concentrate Containing the Same for Admixture with Other Materials in a Multi-Package Carton and for Dilution with Water to Form a Color Developer Working Solution, a Color Developer Concentrate Containing Such a Phosphate and a Method for Using Said Working Solution for Color Development of Color Film." It was filed February 23, 1973.

ceptance as color developers.[2] The application discloses the use of AEMT phosphate salts (*e. g.*, orthophosphate salt, pyrophosphate salt, and polyphosphate salt) as color developers. In their brief, appellants state that their invention "does not reside in the discovery of said chemicals, but in their use [as stable color developers] in concentrated form in a water solution."[3] The advantages of their intention over traditional color developers, such as CD–3, are summarized thus:

> The new color developing concentrate does not need an anti-oxidant. It is stable, that is to say, it does not degrade when the concentrate is permitted to stand. It does not have any deleterious photographic effects. It does not produce false colors. It does not cause migration of the colors formed. It does not fog. It does not cause the release of sulfur dioxide . . . .

These advantages have been shown by a series of comparative tests, which are reported in appellants' application, of the stability and shelf life of concentrates made from (I) AEMT orthophosphate, (II) sesqui-sulfate salt of AEMT, (III) sesqui-sulfate salt of AEMT with sodium sulfite added as an antioxidant, and (IV) AEMT orthophosphate monomethanolate (an alcoholate of AEMT orthophosphate). The specification interprets the resulting data as follows:

> [I]t is apparent that a concentrate made with the sesqui-sulfate salt of AEMT requires sulfite ions to be present if it is to be usable. The influence of the sulfite ions is seen by the differences between the results obtained with the working color developer baths including Concentrates II and III. However, a working color developer bath containing Concentrate I or Concentrate IV without sulfite in the concentrate demonstrates the distinctly superior stability of Concentrates I and IV after storage at an elevated

temperature. Indeed, it has been observed that a working color developer bath containing Concentrate I or IV after storage for several weeks at 50°C with a considerably higher concentration of AEMT than the above baths containing Concentrates II and III showed distinctly superior stability to the working color developer bath containing Concentrates II and III stored for similar periods of time at similar elevated temperatures.

Appellants' claims to color developer concentrates of a Markush group of said AEMT phosphate salts have been allowed. Claim 1, from which the appealed claims depend, is illustrative of these allowed claims:

> 1. A stable color developer concentrate essentially consisting of a concentrated water solution of a 4–amino-N-ethyl, N-beta methanesulfonamidoethyl-m-toluidene salt, of a phosphoric acid selected from the group consisting of orthophosphoric acid, pyrophosphoric acid and polyphosphoric acid containing the equivalent of from about 105% to about 115% orthophosphoric acid, said salt being present in an amount such that the 4–amino-N-ethyl, N-beta methanesulfonamidoethyl-m-toluidene constitutes from 50% to 65% weight per unit volume of the concentrate.

Rejected claims 6 and 7 are to alcoholates of AEMT orthophosphate salt in stable color developer concentrates:[4]

> 6. A concentrate such as set forth in claim 1 wherein the N,N, disubstituted p-phenylenediamine salt is an alcoholate of an orthophosphate, of which the alcohol is selected from the group consisting of methyl, ethyl, n-propyl and isopropyl alcohols.

> 7. A concentrate such as set forth in claim 1 wherein the N,N, disubstituted p-phenylenediamine salt is a methanolate of an orthophosphate.

---

**2.** For example, Eastman Kodak Co. markets the sesqui-sulfate monohydrate salt of AEMT under the designation CD–3.

**3.** The Solicitor's brief does not take issue with this characterization of the claimed invention.

**4.** Appellants allege that the salts of the concentrates of claims 6 and 7 are species of the group of AEMT phosphate salts of claim 1.

*Reference Relied on by PTO*

The Kroll et al. patent[5] (hereinafter "Kroll patent") describes and claims alcoholates of AEMT orthophosphate salt and methods for making them; the utility of these alcoholates is described as follows:

> The use of the new alcoholates of orthophosphate salts in photographic developing baths are [sic] disclosed and claimed in co-pending application Ser. No. 335,343 filed by David K. Bulloch and Hong Zoon Kim on Feb. 23, 1973 . . .

The Kroll patent also discloses that the lower aliphatic alcoholates "can be incorporated in working color developer baths to produce colored photographic images as described in the examples given by Weissberger in U.S. Pat. No. 2,193,015." Although Weissberger discloses the use of AEMT in photographic developer compositions, it was not cited by the PTO in the rejections of the appealed claims and is devoid of any information regarding the stability of the compositions.

*The Declarations*

Three declarations of record are important. A declaration of Harry Kroll and Alderic R. Therrien, whose patent was relied upon in the PTO's rejection, states that the subject matter of their invention (alcoholates of AEMT orthophosphate salt) was developed a few months after, and as a consequence of, the disclosure to Dr. Kroll of the subject matter of the Bulloch et al. (appellants) invention (concentrates of AEMT phosphate salts);[6] that they did not invent the *use* of alcoholates, but, rather, invented the alcoholates themselves and stated in their application that the use of the new alcoholates was in accordance with the Bulloch et al. application.[7]

Two declarations by appellants state that they sent a written disclosure of their invention to several people, including Dr. Kroll; that their invention resided in stable color developer concentrates of AEMT phosphates; that they prepared and tested the concentrates, which produced the desired improved results; that a few months after they disclosed their invention to Dr. Kroll, he told them that he and Therrien had developed the alcoholates (of AEMT orthophosphate salt), which had a high yield and could be simply and economically manufactured; that they tested an alcoholate, which, when incorporated in a concentrate, was found to perform according to their invention; that they were aware that Kroll et al. filed an application for a patent on the Kroll et al. invention, which disclosed the alcoholates as well as a method of making the same; that they knew that the Kroll et al. invention was made months after their broad generic invention of concentrates of AEMT phosphates as stable color developing agents; and that they also knew that "the use of the Kroll and Therrien composition in a water concentrate" was developed by Bulloch et al. and not by Kroll et al.

*Board's Decision*

In reviewing the evidence, the board emphasized the following: (1) the Kroll and Terrien declaration that they invented the alcoholates but that their "use" is in accordance with the copending application of appellants; (2) appellants' acknowledgement in their specification that the "AEMT phosphate alcoholates and their method of preparation are described and claimed" in the Kroll et al. application; and (3) appellants' failure to *state* in their declarations that they invented the alcoholates and their indi-

---

5. Harry Kroll and Alderic R. Therrien are the named inventors on U.S. patent No. 3,875,227, entitled "Alcoholates of Orthophosphate Salts of 4–amino,3–methyl,N-ethyl,N-beta methanesulfonamidoethyl aniline," application filing date February 23, 1973 (the same date as the application on appeal). Both the Kroll patent and the application on appeal have been assigned to the Philip A. Hunt Chemical Corporation.

6. For brevity, alcoholates of an AEMT orthophosphate salt are usually referred to as "alcoholates," and AEMT phosphate salts as "AEMT phosphates."

7. It is clear that "use" here refers to a utility of the alcoholates.

cation that Kroll et al. developed the alcoholates, after which appellants tested an alcoholate in a concentrate according to their invention. The board, therefore, concluded:

> Consequently, with regard to the alcoholate salt, the evidence indicates that appellants were not the inventors and the Kroll et al patent *is* prior art under 35 USC 102(g)/103. Thus, to the extent that the examiner's remarks are directed to claims 6 and 7, limited to concentrates containing the alcoholate, we agree that, on this record, the claims to the aqueous solution of the alcoholate compound are rendered unpatentable by the teachings in the Kroll et al patent. As noted [in appellants' brief] . . . at column 7, lines 36–47 of the cited [Kroll] patent, it is taught that the Kroll et al salts can be incorporated in working color developer baths as described in Weissberger patent 2,192,015.[8] We consider that this clearly shows the obviousness, as meant in 35 USC 103, of said salts' corresponding incorporation in concentrates of the instant type.

In their petition for reconsideration, appellants argued that—

> As inventors of the use of the concentrate genus, they should be entitled to their earlier invention date and they should be entitled to claim the use of any disclosed compound species falling within the genus, even if the species, *as compounds,* were the inventions of a different inventive entity than appellants.

> Appellants are not claiming the alcoholates as their invention. They are merely claiming the use of these alcoholates as a *concentrate,* the concentrate being their invention.

In response, the board noted that an "applicant is *not* necessarily entitled to claim each specific embodiment embraced by his disclosed genus." It restated its conclusion that Kroll was a proper reference[9] and declined to make any change in its previous opinion.

## OPINION

■ Although the claims are not drafted in the usual form of use or method claims, we view the "concentrates" (containing alcoholates of AEMT orthophosphates) of the claims as limited to "stable color developers." The introductory claim language "stable color developer concentrate" is more than a mere statement of purpose; and that language is essential to particularly point out the invention defined by the claims. *See Kropa v. Robie,* 187 F.2d 150, 38 CCPA 858, 88 USPQ 478 (1951); *cf. In re Higbee,* 527 F.2d 1405, 188 USPQ 488 (CCPA 1976). In light of the specification and the declarations of record, there can be no doubt that the intent of appellants is to limit the claims to color developer concentrates (aqueous solutions) of alcoholates of AEMT orthophosphates.[10]

Although other issues are involved in this appeal, we regard as dispositive the absence of any proper basis for the board's conclusion that appellants' claimed invention (concentrates of the Kroll et al. alcoholates as stable color developers) would have been obvious to one of ordinary skill in the art at the time appellants made their invention. In reaching this conclusion, we assume, *arguendo,* that the prior invention (under 35 U.S.C. § 102(g)) by Kroll et al. of the alcoholates themselves could be cited as "prior art" (for purposes of 35 USC 103) against a

---

**8.** This is the only mention of Weissberger in the board's opinion, which specifically states that the Kroll patent is the "only reference cited by the examiner."

**9.** The board's opinion in reconsideration refers to 35 U.S.C. § 102(a) rather than § 102(g), but, at oral argument, the Solicitor advised that this was a typographical error.

**10.** Insofar as the board, in saying "the evidence indicates that appellants were not the inven-

tors," intimated that a rejection would be proper under 35 U.S.C. § 102(f), we are persuaded that the evidence clearly establishes that appellants were the first inventors of stable color developer concentrates of the alcoholates; whereas Kroll et al were the first inventors of the alcoholates themselves. That the Kroll patent discloses such utility of the alcoholates would not preclude appellants from being the inventor of the concentrates of the alcoholates as stable color developers.

subsequent invention by appellants of concentrates of the alcoholates as stable color developers.[11]

▇▇▇ The board said: "we agree that, on this record, the claims [of appellants] to the aqueous solution of the alcoholate compound are rendered unpatentable by the teachings in the Kroll et al patent."[12] However, the record discloses only two items of evidence (both mentioned in the Kroll patent) which might appear to render obvious the concentrates of the alcoholates as stable color developers to one of ordinary skill in the art *once he knew* of the invention of the alcoholates by Kroll et al. These are: (1) appellants' own teaching that AEMT phosphates can be used as stable color developers, which information was given by appellants to Kroll et al. before the latter invented the alcoholates; and (2) the Weissberger patent, which discloses the use of AEMT in photographic developer compositions. As to the first item, it is clear from both the Kroll patent and the affidavits of record that Kroll et al. obtained *from appellants* knowledge of the utility of the Kroll et al. alcoholates in color developer concentrates. This disclosure to Kroll et al. by appellants regarding their prior invention, notwithstanding its publication in the Kroll patent, cannot be used subsequently as "prior art" against appellants.[13] *See In re Mathews*, 408 F.2d 1393, 56 CCPA 1033, 161 USPQ 276 (1969); *In re Land*, 368 F.2d 866, 54 CCPA 806, 151 USPQ 621 (1966);[14] *cf. In re Carreira*, 532 F.2d 1356, 189 USPQ 461 (CCPA 1976). As to the second item of evidence, neither the examiner nor the board relied on Weissberger in rejecting the appealed claims.[15]

▇▇▇ In view of the foregoing, we hold that the concentrates of the alcoholates as

11. This appeal presents the issue of whether in an ex parte case involving an application for patent the disclosure in an issued patent (co-pending applications) of the prior invention of another "is available as 'prior art' within the meaning of that term in § 103 by virtue of § 102(g)" notwithstanding that such disclosure was not available to the public prior to the date of applicant's invention. *See In re Bass*, 474 F.2d 1276, 1286–87, 59 CCPA 1342, 1355, 177 USPQ 178, 186 (1973), which held that the prior invention of another (who had not abandoned, suppressed, or concealed it) *under the circumstances of that case* (which included the disclosure of such invention in an issued patent) "is available as 'prior art' within the meaning of that term in § 103 by virtue of § 102(g)."

12. Of course, any proper rejection involving section 102(g), whether or not combined with section 103 (*see supra* note 9), must be based upon evidence of an invention prior to that of the applicant. *See In re Eickmeyer*, 602 F.2d 974, 979 n.11, —— USPQ ——, —— n.11 (CCPA July 19, 1979). The Kroll patent is not prior art under section 102(g) because its filing date is too late and there is no evidence of prior status of the Kroll et al. invention.

13. Unless, of course, the publication had become a one-year time bar under 35 U.S.C. § 102(b).

14. Although *Mathews* and *Land* involved use of the disclosure in a patent under section 102(e) for purposes of section 103, we find the logic of this court's opinion in *Land* equally applicable to the present appeal:

But it is inescapable fact, too, that when A applies for a patent jointly with B he still has in his head all the information he had as individual inventor A, the same being true of B. If as individuals they apply for patents on individual inventions during a period when they are working together on their joint inventions, they also have in their several heads full knowledge of what they have done jointly. When the joint and sole inventions are related, as they are here, inventor A commonly discloses the invention of A&B in the course of describing his sole invention and when he so describes the *invention* of A&B he is not disclosing "prior art" to the A&B invention, even if he has legal status as "another."

*Id.* 368 F.2d at 879, 54 CCPA at 824–25, 151 USPQ at 633.

15. We note that Weissberger does not teach the use of any AEMT phosphate as a color developing agent. Assuming that it would have been prima facie obvious from Weissberger to use an AEMT phosphate (or alcoholate of AEMT orthophosphate) as a color developing agent, appellants' claimed concentrates have been shown to be unexpectedly stable as color developing agents, thus rebutting the prima facie case of obviousness. As related earlier, appellants tested concentrates of an alcoholate of AEMT orthophosphate and of the sesqui-sulfate salt of AEMT, which would appear to be more pertinent "prior art" than Weissberger. They found the concentrate of the alcoholate of AEMT orthophosphate to be markedly superior to that of the sesqui-sulfate salt of AEMT in stability and shelf life.

defined by claims 6 and 7 would not have been obvious to one of ordinary skill in the pertinent art at the time appellants' invention was made.

The rejection of claims 6 and 7 is *reversed*.

REVERSED.