**The PERKIN–ELMER CORPORATION, a corporation of New York, Appellee,**

v.

**COMPUTERVISION CORPORATION, a corporation of Delaware, Appellant.**

**Appeal No. 83–1195.**

United States Court of Appeals, Federal Circuit.

April 6, 1984.

Richard J. Birch, Boston, Mass., argued for appellant. With him on brief was James H. Mitchell, Boston, Mass.

Robert M. Taylor, Jr., Los Angeles, Cal., argued for appellee. With him on brief were David B. Murphy, Thomas F. Smegal, Jr., and Robert J. Bennett, Los Angeles, Cal.

Before MARKEY, Chief Judge, and DAVIS, BALDWIN, KASHIWA and BENNETT, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the District Court for the Northern District of California holding valid and infringed claims 1 through 5, 7 and 8 of U.S. Patent No. 3,748,015 ('015 patent), issued to Abe Offner, and claims 1 through 8 of U.S. Patent No. 3,821,763 ('763 patent), issued to Robert M. Scott. Both patents were assigned to The Perkin-Elmer Corporation (Perkin-Elmer). We affirm.

## BACKGROUND

Perkin-Elmer's "Micralign" was the first commercially successful projection printer for use in manufacturing semiconductor integrated circuits. A projection printer uses optics to trace a circuit design onto a silicon wafer. Because a high degree of accuracy is demanded, the central component of a projection printer is its optical system. The optical structure in Perkin-Elmer's "Micralign" is disclosed in the '015 and '763 patents.

Computervision Corporation (Computervision) sells a projection printer known as the "Cobilt CA–3000" (CA–3000), which is similar to the Micralign.

## A PROCEDURAL MORASS

In late 1977, Perkin-Elmer sued Computervision for infringement of the patents. Computervision counterclaimed for a declaratory judgment that the patents were invalid and not infringed.

Over Computervision's objection, Perkin-Elmer's demand for a jury trial was honored. The jury trial lasted nine days with each party introducing extensive testimony of numerous experts. Fourteen witnesses appeared before the jury and twelve depositions were read into the record. One hundred and forty documents and physical exhibits were introduced in evidence.

After receiving unchallenged instructions on the issues it was to decide, the jury deliberated and returned a general verdict that claims 1–8 of each patent were valid, not obtained by fraud, and not infringed. No special verdicts under Rule 49(a) and no interrogatories under Rule 49(b) had been sought. Computervision had not objected to the form of verdict submitted to the jury. The district court denied Perkin-Elmer's motions for a judgment of infringement notwithstanding the verdict ("JNOV") and for a new trial and entered a judgment of noninfringement. Perkin-Elmer's request for entry of judgment on the validity verdict was denied and, according to counsel for Computervision, Computervision accepted that denial. The refusal to enter judgment on the jury's validity verdict, the reasons for which are not known, served as a foundation of a procedural morass.

Perkin-Elmer appealed the non-infringement judgment, and the district court's refusal to enter a judgment of patent validity, to the Court of Appeals for the Ninth Circuit (Ninth Circuit). Though the judgment was entered only on the noninfringement verdict, and was viewed by the Ninth Circuit as not final, that court elected to entertain the appeal because "[t]he district court here obviously was not trying to avoid adjudication on the issue of patent validity". *Perkin-Elmer Corp. v. Computervision Corp.*, 680 F.2d 669, 216 USPQ 760 (1982).

The Ninth Circuit held that Perkin-Elmer's motion for JNOV should have been granted, said nothing on the merits of the refusal to enter judgment on validity, and reversed and remanded the case for further proceedings. The Court denied a petition for rehearing and declined a suggestion for rehearing *in banc.*[1]

At a hearing on remand, Perkin-Elmer informed the district court of *Sarkisian v. Winn-Proof Corp.*, 688 F.2d 647 (9th Cir. 1982), *cert. den., Carsonite International Corp. v. Carson Manufacturing Co.*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983), which had been decided a week before and which had articulated special guidelines for use in jury trials of patent suits. The district court deferred entering judgment pending consideration of *Sarkisian*, ordered briefs, and set for oral argument the matter of entering a judgment on the jury's verdict that the patents were valid.

At argument, the court stated that the findings of the jury supported a conclusion of non-obviousness, that there was considerable evidence supporting those findings, and that non-obviousness was clear as a matter of law. The court also noted that a patent is presumed valid, that the burden of persuasion remains with the party asserting invalidity, and that Computervision did not satisfy that burden. In accordance with the Ninth Circuit's mandate and in full compliance with *Sarkisian*, the district court determined that the patents were valid and infringed and granted Perkin-El-mer's motion for entry of judgment so stating.

The district court denied these Computervision motions: for JNOV on validity; for a new trial, based on an alleged denial of jury trial on a fact issue underlying the determination of nonobviousness; and to vacate the judgment, grant a new trial, and reopen discovery, all based on alleged fraudulent conduct of Perkin-Elmer during trial and appeal to the Ninth Circuit.

Computervision appeals the judgment, asserting error in denial of all its motions except that to reopen discovery. Further, Computervision seeks review and reversal of the Ninth Circuit's decision, accompanied by reinstatement of the original jury verdict of noninfringement.

## ISSUES

(1) Whether the district court erred in denying Computervision's motion for JNOV on validity.

(2) Whether the district court abused its discretion in denying Computervision's motion for new trial based on absence of a jury trial of a fact issue underlying the determination of nonobviousness.

(3) Whether the decision of the Ninth Circuit should be reviewed.

(4) Whether the district court abused its discretion in denying Computervision's motions for new trial and to vacate the judg-

1. The Ninth Circuit filed a two-page opinion, the portions relevant here consisting in their entirety of these four paragraphs:

Computervision's CA–3000 functions in a strikingly similar way [to the Micralign]. The Micralign and the CA–3000 are the only projection printers on the market in which the optics consist entirely of mirrors. Both axially space a small convex mirror behind a larger concave one. Both use a plate with an annular slit to restrict the light passing through the optical system and both have an identical light path from the circuit design to the wafer. The only difference is that the CA–3000 uses a less convex mirror and places the mirrors farther apart.

\* \* \* \* \* \*

The differences between the Micralign and the CA–3000 are miniscule. The CA–3000 merely uses a less convex mirror and places it further from the concave mirror than the Micralign does. Otherwise, the two optical systems are identical.

Both rely on mirrors for their optics and employ one mirror placed behind another to reflect a circuit design onto a silicon wafer. A minor adjustment of the curvature and placement of one mirror does not place it beyond the reach of the patented procedure. Many variations are possible within the range of any patented procedure. Here, the degree of difference between the two systems created by the Cobilt's [CA–3000's] variation is minimal.

Therefore the CA–3000 does infringe Patent '015 and Patent '763 and Perkin-Elmer's motion for judgment notwithstanding the verdict should have been granted by the district court.

ment based on allegations of fraudulent conduct.

## OPINION

### A. *Denial of the Motion for JNOV on Validity*

#### 1. *Standard of Review*

When a party moves for JNOV, the trial court must consider all the evidence in a light most favorable to the non-mover, must draw reasonable inferences favorable to the non-mover, must not determine credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed.Cir.1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983). Following those guidelines, the court determines whether the evidence so viewed constitutes "substantial evidence" in support of the jury's findings and, if so, whether those findings can support the legal conclusions necessarily drawn by the jury in accord with its instructions enroute to its verdict. *Railroad Dynamics, Inc., supra*, 727 F.2d at 1512, 220 USPQ at 936. "Substantial" evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review. *Loyce E. Hayes v. Department of the Navy*, 727 F.2d 1535 at 1537 (Fed.Cir.1984); *SSIH Equipment S.A. v. USITC*, 718 F.2d 365, 371 n. 10, 218 USPQ 678, 684 n. 10 (Fed.Cir. 1983). In sum, only when the court is convinced upon the record before the jury that reasonable persons could not have reached a verdict for the non-mover, should it grant the motion for JNOV. *Railroad Dynamics, Inc., supra*, 727 F.2d at 1512, 220 USPQ at 936.

In its review, the district court must not lose sight of the presumption of validity. *Id.*, 727 F.2d at 1512–13, 220 USPQ at 934–35. Where, as here, there is a verdict of validity, the question is not whether the patentee had introduced sufficiently substantial evidence to support the verdict, but whether the challenger's evidence so met the burden imposed by 35 U.S.C. § 282 (" [t]he burden of establishing invalidity of a patent or any claim shall rest on the party asserting such invalidity") that reasonable jurors could not have concluded that the challenger failed to overcome that burden. *Id.*

To facilitate review on a motion for JNOV and on appeal, it is preferred that a jury be provided with special interrogatories designed to reveal more clearly the findings it made. Absent such interrogatories, the law presumes the existence of findings necessary to support the verdict the jury reached. *Id.*, 727 F.2d at 1516, 220 USPQ at 939. *Accord, Velo-Bind, Inc. v. Minn. Mining & Mfg. Co.*, 647 F.2d 965, 971, 211 USPQ 926, 932 (9th Cir.1981); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 767, 204 USPQ 785, 788–89 (5th Cir.), *cert. den.* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980); *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1061, 191 USPQ 305, 314 (4th Cir.), *cert. den.* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *White v. Mar-Bel, Inc.*, 509 F.2d 287, 290, 185 USPQ 129, 131 (5th Cir.1975); *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 468 F.2d 225, 228, 175 USPQ 577, 579 (7th Cir.1972), *cert. den.* 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973). The particular findings the jury must make before it can reach a verdict are controlled by the court's instructions to the jury. *Railroad Dynamics, Inc., supra*, 727 F.2d at 1516, 220 USPQ at 939.

On appeal from denial of a motion for JNOV, appellant must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings. *Id.*, 727 F.2d at 1517, 220 USPQ at 935–36.

Computervision refers repeatedly to the trial judge's statement of a personal view, made in the course of commenting on the Ninth Circuit's decision, that the claims at

issue could not be both valid and infringed. We review judgments, however, not passing statements. *Id.*, 727 F.2d at 1512, 220 USPQ at 934; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983); *In re Hyatt*, 708 F.2d 712, 715, 218 USPQ 195, 198 (Fed.Cir.1983). The district court made no finding that the claims were not infringed, or if they were, that they could not be valid. The appealed judgment states that the claims are valid and infringed. The trial judge had ample opportunity to grant Computervision's motion for JNOV, but did not. On the contrary, reflecting proper respect for the jury's function and the conclusion of the Ninth Circuit, the trial judge concluded that Computervision did not satisfy the JNOV requirements properly imposed by the law on one seeking to set aside a jury verdict.

### 2. *Anticipation*

The jury was instructed under 35 U.S.C. § 102 [2] that there is no anticipation "unless all of the same elements are found in exactly the same situation and united in the same way ... in a single prior art reference". *See e.g., Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.1983). From that instruction and the jury's verdict, the law presumes that the jury found no anticipation under § 102 because of differences (discussed *infra*) between the claimed inventions and the prior art. Having shown no basis for determining that the record is devoid of substantial evidence to support that finding, Computervision has not met its burden on appeal, *i.e.*, to establish that a reasonable juror could not have found that Computervision failed to overcome the presumption of novelty included within the

presumption of validity mandated by 35 U.S.C. § 282.

### 3. *Obviousness*

■ Determining obviousness/nonobviousness under 35 U.S.C. § 103 [3] involves factual inquiries into: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness, *e.g.*, long felt need, commercial success, failure of others, copying, unexpected results. *See, e.g., Environmental Designs, Ltd. v. Union Oil Co. of Calif.*, 713 F.2d 693, 695, 218 USPQ 865, 867 (Fed. Cir.1983); *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1379–82, 217 USPQ 1281, 1283–85 (Fed.Cir.1983). The critical question, as § 103 makes plain, is whether the invention as a whole would have been obvious to one of ordinary skill in the art at the time it was made.

■ Included within the presumption of validity mandated by 35 U.S.C. § 282 is a presumption of nonobviousness which the patent challenger must overcome by proving facts with clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358–59, 220 USPQ 763, 769–70 (Fed.Cir.1984); *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 960, 220 USPQ 592, 599 (Fed.Cir.1983). The presumption remains intact even upon proof of prior art not cited by the Patent and Trademark Office (PTO), *Raytheon, supra*, 724 F.2d at 960, 220 USPQ at 599, though such art, if more relevant than that cited, may enable the challenger to sustain its burden. *Id.*

■ The obviousness/nonobviousness issue is a legal issue and may be submitted

---

**2.** Section 102 provides that a person is entitled to a patent unless one of a series of circumstances, described in subparagraphs (a)–(g) of that section, apply. Section 102(a) precludes a patent if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent".

**3.** Section 103 provides in relevant part:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

to the jury with proper instructions. *Railroad Dynamics, Inc., supra,* 727 F.2d at 1517, 220 USPQ at 937; *White v. Jeffrey Mining Co.,* 723 F.2d 1553, 1558, 220 USPQ 703, 705 (Fed.Cir.1983); *Connell, supra,* 722 F.2d at 1547, 220 USPQ at 197.

The normal sequence of events following the jury's delivery of its verdict is: (1) automatic entry of judgment on the verdict promptly by the clerk in the absence of contrary instructions from the court, Rule 58, Fed.R.Civ.P.;[4] (2) within 10 days, the losing party, whose earlier motion for directed verdict had been denied, may file a motion for *judgment* notwithstanding the *verdict.* Rule 50(b), Fed.R.Civ.P.

In considering on remand Perkin-Elmer's motion for entry of judgment on the verdict of validity, the trial court had the then applicable language of the opinion in *Sarkisian v. Winn-Proof Corp., supra,* called to its attention. The court did not, however, appear to interpret the indication in that opinion that it should determine nonobviousness "independently" of the jury's verdict as requiring it to totally ignore the rules applicable to jury trials in non-patent cases, or to proceed as though the jury had never been impanelled, had never been instructed on the issue, had never considered the issue, and had never rendered a verdict based on its conclusion. On the contrary, in concluding, as did the jury, that the inventions would have been nonobvious, the court proceeded in a manner similar to that involved in deciding a motion JNOV and used the jury's presumed findings supported by substantial evidence. The court's use of the jury's findings in this case indicates that it was in fact answering the appropriate question: can the jury's presumed findings support conclusion of nonobviousness encompassed in the jury's verdict of validity?[5] The trial court effectively answered the same question in then denying Computervision's motion for JNOV.

The record contains strong objective evidence—which Computervision does not contest—in support of the nonobviousness conclusion. It was stipulated that the Micralign projection printer, having as its critical element the optical system of the '015 and '763 patents, was an outstanding commercial success and was the first commercially successful projection printer for use in the manufacture of semiconductor integrated circuits. Testimony unchallenged on appeal established that the Micralign had numerous advantages over previous printers, became the industry standard, revolutionized the industry, and satisfied a long felt need; unchallenged testimony also showed surprise at the exceptional results achieved by the invention claimed in the '015 patent, and the radical departure from traditional approaches to lens design represented by the invention claimed in the '763 patent.

Such objective evidence can constitute "highly probative, objective criteria fully capable of serving as a foundation for the legal conclusion of unobviousness". *Ray-*

---

**4.** The record does not indicate whether such instructions were issued. The trial court's denial of Perkin-Elmer's request for entry of judgment on the jury's validity verdict may have been interpreted by the clerk as the equivalent of such instructions. Perkin-Elmer apparently did not seek a writ of mandamus but included the denial of its request as an element of its appeal.

**5.** The view suggested in *Sarkisian,* that a jury verdict on nonobviousness is at best advisory, would make charades of motions for directed verdict or JNOV under Fed.R.Civ.P. 50 in patent cases. Those motions apply only to *binding* jury verdicts. *See* 9 Wright and Miller, Federal Practice and Procedure § 2523 (1982).

Moreover, use of an advisory jury is limited to actions not triable of right by a jury, Rule 39(c), Fed.R.Civ.P., and Rule 52(a), Fed.R.Civ.P., requires the court to enter its own set of findings and conclusions just as it must do when sitting without a jury. That requirement, and the reluctance to take days or weeks of jurypersons' lives for service as mere advisors, appear to account for the virtually universal non-use of advisory juries.

Moreover, the notion that patent cases are somehow outside the mainstream of the law, and that special, judge-designed rules not applicable to other types of jury trials must be applied when a "patent case" is tried before a jury, finds no support in the statute, in the Federal Rules of Civil Procedure, or in the Seventh Amendment to the Constitution.

*theon Co. v. Roper Corp., supra,* 724 F.2d at 961, 220 USPQ at 600. That objective evidence, and the inadequacies of the prior art summarized below, constitute a formidable obstacle to Computervision's burden of establishing on appeal that reasonable jurors could not have concluded that it failed to meet its statutory burden under § 282. Computervision did not overcome that obstacle.

The ensuing discussion of the prior art illustrates the presence of substantial evidence supporting the facts presumably found by the jury.

(a) *Differences Between the Invention Claimed in the '015 Patent and the Prior Art*

(1) *The '015 Patent*

The invention claimed in the '015 patent is illustrated in Figure 2:

Two concentric spherical mirrors, one concave (21) and the other convex (20), have their centers of curvature at point P on reference axis SA. There are three reflections in the system: the light from the object plane (O) is reflected off mirror 21 to mirror 20, off mirror 20 to a second portion of mirror 21, and off that mirror portion to the image plane (I). Mirror 20 has a radius of curvature (Rcx) greater than one half that of mirror 21 (Rcc) by a slight amount, referred to by Perkin-Elmer as $\triangle$. The system creates a stigmatic image, defined in testimony as pointlike imagery, where all the rays from a point on

an object come to a point on an image without aberrations. The '015 patent describes the invention as a system in which "the image is formed in accurate micro detail with high resolution".

Claim 1 is illustrative:

1. A unity magnification catoptric [*i.e.,* using only mirrors] image-forming system comprising at least one concave mirror and at least one convex mirror, said mirrors being supported with their centers of curvature substantially coincident, and means to define a location for an object the image of which after at least three reflections including at least one reflection at each of said mirrors is a real image at a second location, the sum of the powers of said convex mirrors multiplied by the numbers of reflections thereat respectively being sufficiently less than the sum of the powers of said concave mirrors multiplied by the numbers of reflections thereat respectively to produce at said second location a stigmatic image of an object in said first location.

The system of claim 1 is one of unity magnification and is image forming. Those limitations appear in the preamble, but are necessary to give meaning to the claim and properly define the invention. *See In re Bulloch,* 604 F.2d 1362, 1365, 203 USPQ 171, 174 (CCPA 1979); *Kropa v. Robie,* 187 F.2d 150, 151–52, 38 CCPA 858, 861, 88 USPQ 478, 480–81 (CCPA 1951).

The "sum of the powers" language of claim 1, also present in claims 2–4, is equivalent to the language in claims 5 and 7–8 that $Rcx = Rcc/2 + \omega$. Because the claims have generally been argued together, the validity of all the claims stands or falls with claim 1. *See, e.g., Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 960, 220 USPQ 592, 599 (Fed.Cir.1983).

(2) *Differences From the Prior Art*

The Reed patent (3,190,171), considered by the PTO, discloses a viewing system simulating the appearance of an aircraft carrier as the pilot approaches for a landing. The system employs concentric con-

vex and concave mirrors with a radii ratio of 2:1. The image system of the carrier is not of unity magnification and is a viewing, not an image forming, system; the carrier image is a virtual, relatively poor image, whereas claim 1 requires formation of a real, stigmatic image; it involves a 2:1 mirror system, whereas claim 1 involves a non 2:1 system.[6] Though Reed said he modified his system to achieve a non-concentric 2:1 system, the modified system does not correspond to the concentric non-2:1 system of the '015 patent.

Computervision urges that the Reed disclosure be viewed backwards, *i.e.*, as a system for forming an image of the pilot's eye. There is no evidence that those of ordinary skill in the art would so view it, and such distortion of a reference in light of a patentee's disclosure is pure hindsight.

Cited in Computervision's brief (though not in its closing argument to the jury) is the Schmidt telescope, used principally since 1930 in astronomy. Unlike the claimed invention, the Schmidt system is not a catoptric, *i.e.*, all mirror, system, has chromatic aberration, does not produce a stigmatic image, and has no convex mirror.

There was testimony about modifying the Schmidt telescope by replacing a photographic plate therein with a convex mirror. Assuming, arguendo, the propriety of such testimony, the modification is not catoptric (all mirrors), does not produce unity magnification, lacks "means for defining the location of an object", and does not produce the stigmatic image of the claimed invention.

(b) *Differences Between the Invention Claimed in the '763 Patent and the Prior Art*

(1) *The '763 Patent*

The '763 invention is illustrated in Figs. 1 and 2:

FIG. 1

FIG. 2

Figure 1 depicts two groups, 10 and 11, of lens elements together forming a lens 16

having optical center C. The invention is not limited to "lens only" (dioptric) sys-

6. There are other differences in the other claims. For example, claim 7 requires that the "means to define a location for an object" include "an arcuate slit of radius substantially equal to the distance of said object location from said center of curvature".

tems; the image forming elements can be catoptric (all mirrors) or catadioptric (lenses and mirrors). The lens elements are rotationally symmetric about a common optical axis OA. The system also includes a mask 21 having a slit 22 positioned adjacent a conjugate focal plane of the lens 16 for the object field being magnified, and an image receiving surface, such as film 18, disposed behind the slit in a focal plane of the lens 16 for the object field of interest. The elements of the system are fixed with respect to each other, except that film 18 may be advanced in its own plane relative to the mask as the system is moved with respect to the object field. The system is intended to image a distant object field at infinity on the left.[7] The slit 22 is of such curvature and radial extent, and is so spaced from the axis OA, as to lie adjacent a part of an annular zone 20 of the second principal focal plane of lens 16 in which case the lens will focus bundles of collimated light from the left and will have a selected range of values for the angle of inclination FA of those bundles to the system axis.

Claims 1–8 of the '763 patent include six structural and two method claims. Claims 1 and 7 are illustrative:

1. Image-forming apparatus comprising image-forming optical elements arranged in an imaging system that is rotationally symmetric about an axis, said system being optically corrected to produce stigmatic imagery in an annular zone centered on said axis with all points in said zone possessing field angles other than zero, at least one imaging surface conforming substantially to at least part of said zone, aperture limiting means defining at a conjugate focal surface of said system an area whose points possess field angles corresponding to the field angles of points in said zone, said aperture limiting means being positioned to define an object field area imaged on said imaging surface, and means to scan

said object field area with respect to said system.

7. The method of recording an image of an extended object which comprises the steps of

a. providing an image-forming system that is rotationally symmetric about an axis and optically corrected to produce stigmatic imagery in an annular zone centered on said axis with all points in said zone possessing field angles other than zero,

b. scanning an object field past said system, and

c. recording through time that portion of the image of said object field that produced by said system at a segment of said annular zone.

Because the claims have generally been argued together, the validity of all the claims stands or falls with claims 1 and 7.

### (2) *Differences From the Prior Art*

Computervision summarily asserts in its brief, without explanation, that the Reed and Schmidt disclosures are applicable. That bare assertion cannot possibly satisfy Computervision's appellate burden of showing that no reasonable juror could have concluded that it had failed to prove facts rendering the '763 patent claims invalid.

The Sonne and Goddard patents are put forward. Sonne, described in the '763 patent, discloses a stereoscopic camera for aerial photography. Goddard discloses essentially the same aerial camera system, except that Goddard's film has layers photosensitive to different colors. Computervision has not demonstrated that no reasonable juror could have found that Sonne or Goddard fail to disclose, for example, these limitations of claims 1 and 7: that the system be "optically corrected to produce stigmatic imagery"; and that such imagery be "in an annular zone centered on said

---

7. Annular field systems need not work only at infinity. They can work at finite conjugates, in which case the mask having a slit therein may be placed near the object or near the image, or one may be disposed near each.

axis, with all points in said zone possessing field angles other than zero".

Citing the sparse testimony of a Perkin-Elmer expert describing a Cook-Triplet lens as "any lens combination which has two positive lenses, separated with a negative lens between them", Computervision's brief contains no articulation and no citation to the record to indicate what was presented to the jury concerning the claim elements and whatever the Cook-Triplet lens is alleged to have taught. The Appendix contains no description or drawing of a Cook-Triplet lens. In sum, Computervision's burden of showing error by the trial court in denying its motion for JNOV is not assisted by its reference to testimony about the Cook-Triplet lens.

## CONCLUSION ON VALIDITY

 Nothing in the prior art anticipates or, considered singularly or as a whole, would have suggested, the inventions claimed in the '015 and '763 patents. The objective evidence is strong in support of the judge's ruling upholding the jury's verdict on validity. Thus, the district court did not err in denying Computervision's motion for JNOV.

### B. *Loss Of Right To Jury Trial*

 Though it had opposed Perkin-Elmer's demand for a jury trial, Computervision argued it was deprived of a jury determination of the differences between the claimed inventions and the prior art and, based on that argument, moved for a new trial.[8] In reviewing a denial of a motion for new trial, the abuse of discretion standard applies. *See e.g., Railroad Dynamics, Inc., supra,* 727 F.2d at 1512, 220 USPQ at 937. No such abuse occurred here.

Computervision says this is the first case in which a jury verdict of noninfringement was reversed without consideration of a validity verdict, resulting in unfairness. Perkin-Elmer cites numerous non-jury cases in which a court of appeals has reversed a court finding of noninfringement and remanded for entry of judgment without reconsideration of validity. It is unnecessary, however, to decide such questions. There has been a judgment of validity and infringement and it is that judgment that has been appealed to this court.

The plight alleged by Computervision results from the procedural morass described above. Had judgment been initially entered on validity and infringement, the Ninth Circuit could have considered both issues, rendering this appeal unnecessary. Yet, Computervision did not object to the district court's action, but "accepted" its refusal to enter judgment on validity.

The district court's refusal to enter judgment on validity may have been ill advised; it cannot now serve as reversible error on this appeal. The thrust of Computervision's argument here is that the Ninth Circuit's interpretation of the claims necessarily differed from that of the jury. Hence, says Computervision, the jury never determined the differences between the prior art and the claims as interpreted by the Ninth Circuit. The argument depends critically on facts merely presumed and not established, *i.e.,* that the Ninth Circuit interpreted the claims and that its interpretation differed from that reached by the jury in following the trial judge's unchallenged instructions.

The Ninth Circuit looked at the devices and concluded that the "miniscule" difference between the Micralign and CA–3000 printers was insufficient to constitute substantial evidence in support of the jury's non-infringement verdict. 680 F.2d at 671, 216 USPQ at 761–62. That conclusion did not necessarily depend on a claim interpretation different from that in accord with which the jury was instructed. It, as the language of the Ninth Circuit opinion makes plain, rested on a different assessment of the CA–3000 printer and its equivalency to the claimed inventions:

---

8. Because we dispose of the issue on other grounds, we need not decide whether Computervision's opposition to jury trial amounted to a waiver under Federal Rule 38. *See e.g., Reid Bros. Logging Co. v. Ketchikan Pulp Co.,* 699 F.2d 1292 (9th Cir.1983).

Both rely on mirrors for their optics and employ one mirror placed behind another to reflect a circuit design onto a silicon wafer. A minor adjustment of the curvature and placement of one mirror does not place it beyond the reach of the patented procedure. Many variations are possible within the range of any patented procedure. Here, the degree of difference between the two systems created by the Cobilt's variation is minimal [CA–3000].

*Id.*

 Though the Ninth Circuit's opinion did not use the word "equivalence", that court was presumably aware that the jury had been instructed on the doctrine and its opinion spoke the language of equivalency ("functions in a strikingly similar way"; "the only difference"; "differences ... are miniscule"; "Otherwise ... identical"; "A minor adjustment ... not ... beyond the reach"; "variations ... within the range"). Assessing equivalency involves a determination of whether the claimed invention and alleged infringing device, which are different (there would otherwise be literal infringement), perform substantially the same function in substantially the same way to give the same or substantially the same result. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). If equivalence appears, infringement will be found unless (1) arguments or amendments made by applicant during prosecution (prosecution history estoppel) estop the patentee from asserting a range of equivalence broad enough to encompass the accused product or process; or (2) the equivalent device is within the public domain, *i.e.,* found in the prior art, *Carmen Industries, Inc. v. Wahl,* 724 F.2d 932, 942, 220 USPQ 481, 489 (Fed.Cir.1983); *Thomas & Betts Corp. v. Litton Systems, Inc.,* 720 F.2d 1572, 1579–80, 220 USPQ 1, 6–7 (Fed. Cir.1983). Determining the existence of either condition (1) or condition (2) does not require reassessment of validity. *See e.g., Carmen Industries, supra,* 724 F.2d at 936 n. 2, 937 n. 5, 220 USPQ at 484 n. 2, 485 n. 5. Nor does determination of the existence

of either condition necessitate a re-interpretation of the claims as written. Computervision's assumptions concerning a Ninth Circuit interpretation of the claims are unsupported in the record.

### C. *The Ninth Circuit Decision*

The decision of the Ninth Circuit is entitled to great deference under the law of the case doctrine. *See Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1580, 220 USPQ 490, 495 (Fed.Cir.1983). That doctrine ensures judicial efficiency and prevents endless litigation. *Id.* Its elementary logic is matched by elementary fairness—a litigant given one good bite at the apple should not have a second.

Here, Computervision has had an eminently fair chance to litigate the infringement issue. The issue was presented to the jury, to the trial judge on Perkin-Elmer's motion, and to the Ninth Circuit on direct appeal, on petition for rehearing, and in a suggestion for rehearing in banc. Computervision prevailed in the first two instances and lost in the last three. In those circumstances, there is no basis to relitigate infringement.

 We recognize that a court that established the law of a case could elect to review its earlier decision and change it if one of three "exceptional circumstances" exist: (1) the evidence on subsequent trial was substantially different; (2) controlling authority has intervened; or (3) the earlier decision was clearly erroneous and would work a manifest injustice. *Central Soya, supra,* 723 F.2d at 1580, 220 USPQ at 495. Revisions in the law of the case occur "very infrequently" when an appellate court is asked to review the decision of a coordinate court. 1B Moore's Federal Practice ¶ 0.404 [4.–5 at 138].

 Arguing the "clearly erroneous/manifest injustice" exception, described by our predecessor court as "stringent", and as requiring a "strong showing of clear error", *Short v. United States,* 661 F.2d 150, 154, 228 Ct.Cl. 535 (1981), Computervision would have us review the Ninth

Circuit decision on its merits. The decision to review is a threshold consideration, for only on full review can a court determine whether the decision reviewed was clearly erroneous and produced a manifest injustice. To obtain review, an appellant must make at least a *prima facie* showing of error sufficient to indicate the advisability of review. A mere suspicion of error will not suffice; we must be "convinced to a certainty" that error warranting review exists. *Id.* Computervision has made no such convincing showing.

Computervision says the Ninth Circuit did not consider the claim language and the prior art. However, the Ninth Circuit had before it the claims, the prior art, and the parties' briefs and arguments. That the court did not specifically mention the claims and prior art in its opinion forms no basis for an assumption that it did not consider those elements in determining that the CA–3000 printer was an equivalent. That a court "do[es] not discuss certain propositions do[es] not make the decision inadequate or suggest the ... court failed to understand them". *Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84, 61 USPQ 73, 75 (D.C.Cir.1944). Moreover, "[w]e should never assume that a court of concurrent jurisdiction neglected to perform its duty". *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554, 557, 191 USPQ 548, 550 (6th Cir.), *cert. den.* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976).

In an effort to show that the Ninth Circuit did not understand the technology, Computervision says one of the two differences the court found (wider placement of the convex and concave mirrors) does not exist because the mirrors are spaced the same in both systems. That error, however, would, if anything, have favored Computervision because it would have increased the court's perceived differences from one to two. Computervision has not made a prima facie showing that the finding of an allegedly non-existent difference constituted clear error producing manifest injustice.

### D. *Alleged Fraudulent Conduct*

■ The motion for a new trial or to vacate the judgment under Rule 60(b) alleged fraudulent conduct. On review of a denial of a motion to vacate under Rule 60(b), the standard, like that on review of a denial of a motion for new trial, is whether an abuse of discretion occurred. *See e.g., CTS Corp. v. Piher Int'l Corp.*, 727 F.2d 1550 at 1555 (Fed.Cir.1984). None did.

■ The allegation of fraudulent conduct rests on a statement made after trial in this action by counsel for a defendant (Canon) in a separate case filed by Perkin-Elmer. At a combined hearing in connection with this action and that case, counsel for Canon said that before trial in this action Perkin-Elmer changed its Micralign printer from the concentric non-2:1 system of the '015 patent claims to the nonconcentric 2:1 system of the CA–3000 printer to get an improved result. Computervision says Perkin-Elmer witnesses "fraudulently" testified that the printer claimed in the '015 patent and the CA–3000 printer achieve "substantially the same" result and thereby rendered the patents in suit unenforceable. We disagree.

Assuming that a statement of counsel for a defendant in another case can be viewed as testimony or as evidence, exact identity of results is not required in establishing equivalency. Though *Graver Tank, supra,* alternatively speaks of the "same" and "substantially the same" result, 339 U.S. at 608, 70 S.Ct. at 856, the doctrine is clearly based on substantial, not exact, identity:

> Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect.

*Id.* at 609, 70 S.Ct. at 856. Similarly, though the doctrine was initially articulated in *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1361, 219 USPQ 473, 480 (Fed.Cir.1983) as appearing to involve the "same" result, when the court applied the doctrine it referred to "substantially the same" result. 717 F.2d at 1366, 219 USPQ at 484. Moreover, our predecessor

court has recognized that the results achieved may be "substantially" the same. *See e.g., Lockheed Aircraft Corp. v. United States,* 553 F.2d 69, 79, 193 USPQ 449, 461, 213 Ct.Cl. 395, 414 (1977); *Pratt & Whitney Co. v. United States,* 345 F.2d 838, 841, 145 USPQ 429, 431, 170 Ct.Cl. 829, 833 (1965).[9]

■ Thus, if Perkin-Elmer changed its commercial device to get an improved result by making it the same as the CA–3000, it would not be inconsistent—much less fraudulent—for Perkin-Elmer witnesses to testify that the claimed and accused devices are nevertheless equivalent. A patentee need produce no commercial device. Infringement is determined by comparison with the patentee's claimed invention, not with its marketed product. *CTS Corp. v. Piher Int'l Corp.,* 527 F.2d 95, 100, 188 USPQ 419, 423 (7th Cir.1975), *cert. den.* 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976).

Presumably, as above indicated, the Ninth Circuit so determined equivalence, and, though it did not in its opinion employ the words of *Graver Tank, supra,* its words do indicate that it found "substantially the same" result. Perkin-Elmer's witnesses testified that the results are substantially the same, not identical. The instructions to the jury defined equivalency in terms of "substantially the same" result. Computervision's own expert testified that the CA–3000 optical system performs the same work in substantially the same way as the '015 patent system, and accomplished a similar result. For all of those reasons, Computervision's assertion of fraudulent conduct is unpersuasive.

The district court committed no abuse of discretion in denying Computervision's alternative motions for new trial or to vacate the judgment under Rule 60(b).

*Decision*

The denial of Computervision's motion for JNOV having been correct, the denial of its motions for new trial and to vacate the judgment having represented no abuse of discretion, the decision of the Ninth Circuit having established the law of the case, and no legal error having been shown, the judgment of validity and infringement of claims 1–5, 7 and 8 of the '015 patent and claims 1–8 of the '763 patent must be affirmed.

### AFFIRMED

DAVIS, *Circuit Judge,* dissenting.

I am concerned that the District Court denied the appellant's motion for new trial on validity simply because the judge felt compelled to do so by the Ninth Circuit's ruling on infringement, despite the District Court's strongly expressed views (in argument) that (a) the Ninth Circuit's interpretation of the patent (in the infringement appeal), without any necessary jury findings supporting that position, was "absurd", "not according to me", "not according to the jury", a position "with which I strongly take issue",[1] (b) that the patents could not both be valid and infringed, but (c) that the District Court felt bound to uphold validity by the Ninth Circuit's infringement decision because that appellate court interpreted the patents broadly as a "conclusion of law", though the District Court clearly considered that that interpretation, if proper, would necessarily depend on findings of fact to be made by the jury but not actually made in this case.

Because the District Court indisputably believed that the original jury had not interpreted the patent, on the basis of the court's instructions, in the way the Ninth

---

9. Though some opinions of this court contain references to the "same" result, the court was not required to make a "same"—"substantially the same" distinction in the cases before it. *See e.g., Carmen Industries, Inc. v. Wahl, supra; Thomas & Betts Corp. v. Litton Systems, Inc., supra.*

1. The District Court somewhat earlier said: "I am rather concerned as to whether or not in the light of that most unusual act of [the Ninth Circuit], where [they] really made a finding of fact there, whether the defendant doesn't deserve a new trial on the issue that's brought back here."

The Ninth Circuit's interpretation was that the appellant's system and the appellee's claims were practically identical, with "miniscule" differences.

Circuit had done, and because, if one accepts the Ninth Circuit's interpretation, appellant was entitled to a new trial so that the "obviousness" findings required by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), should be made by a jury with respect to the Ninth Circuit's interpretation of the claims, a new trial should have been granted. It was not granted solely because the District Court erroneously felt bound with respect to validity by the Ninth Circuit's infringement decision.[2] That was an abuse of discretion, calling for reversal of the refusal to grant the new trial requested by appellant and a remand for a new trial on validity only.[3] "Rule 59 [New Trials] gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, *and indeed his duty,* to order a new trial if he deems it in the interest of justice to do so." (emphasis added) 11 Wright & Miller, Federal Practice and Procedure, Civil § 2803, pp. 31–2 (1973). When, as here, the trial judge refuses to grant a motion for a new trial which he plainly should have granted, an abuse of discretion has occurred. *Ruiz v. Hamburg-American Line*, 478 F.2d 29, 34 (9th Cir.1973).

**2.** It is undisputed that the Ninth Circuit did not consider validity at all.

**3.** I agree with the majority that this court should not reconsider the Ninth Circuit's determination of infringement.