**TOL–O–MATIC, INC., Plaintiff/Cross–Appellant,**

v.

**PROMA PRODUKT–UND MARKETING GESELLSCHAFT m.b.H. and Norgren Co., Defendants–Appellants.**

Nos. 90–1153, 90–1165.

United States Court of Appeals, Federal Circuit.

Sept. 26, 1991.

John M. Mason, Dorsey & Whitney, Minneapolis, Minn., argued for plaintiff/cross-appellant. With him on the brief were James H. Patterson, Richard C. Strasser and Peggy L. Hicks, of counsel.

George G. Matava, Sheridan, Ross & McIntosh, Denver, Colo., argued for defendants-appellants. With him on the brief were Craig C. Groseth and Todd P. Blakely.

Before NEWMAN and RADER, Circuit Judges, and SKELTON, Senior Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

This appeal is taken from the judgment of the United States District Court for the District of Colorado, holding claims 25–31 of the patent in suit invalid for lack of utility, unenforceable based on inequitable conduct, and not infringed.[1] The judgment of unenforceability and invalidity are reversed. The judgment of noninfringement is affirmed.

### The Patented Invention

Proma Produkt–Und Marketing Gesellschaft m.b.H. is the owner of United States Patent No. 4,664,020, invention of Siegmund Kaiser (the "Kaiser patent"). Norgren Company is the exclusive licensee under the patent. (The appellants will collectively be called "Proma".)

The Kaiser patent is directed to a rodless piston-cylinder. In rodless cylinders, an internal piston is driven by pneumatic or hydraulic pressure applied to one end of the cylinder. This piston is connected to a rib that extends through a slit that runs the length of the cylinder. In use, the rib is connected to an external load; when the piston is driven toward the opposite end of the cylinder, the load is moved. If the slit through which the rib passes is not maintained in a sealed condition, air or hydraulic fluid leaks from the cylinder and pressure is lost. As Kaiser discussed in the patent, the integrity of the slit seal can be compromised in two principal ways: internal pressure from within the cylinder may widen the slit; or the external load may drive the rib against one side of the slit, also causing widening.

In the Kaiser device, longitudinal grooves run the length of the cylinder wall, parallel to and located on either side of the slit. To the rib is attached a yoke that spans the slit and moves on guides along

---

1. *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft m.b.H.*, No. 87–B–1985 (D.Col. November 14, 1989).

the grooves on the cylinder. As the rib and yoke move along the cylinder, forces tending to widen the slit are counteracted by the yoke "squeezing" the slit. Figure 2 of the Kaiser patent shows yoke (11) riding in grooves (16) on the outside of the cylinder:

Claim 25 was designated by the parties as representative of claims 25–31, the only claims that were litigated:

25. Piston-cylinder structure having an elongated tubular structure closed at its end; an elongated piston slidable in the cylinder;

a slit extending through the wall of the cylinder longitudinally with respect to its axis;

a motion transfer element secured to the piston and having a rib-like portion extending through said slit and to the outside of the cylinder wall movable longitudinally of the cylinder to transfer relative motion between the piston and the cylinder to an external device; and means for flexibly sealing and closing off the slit in the cylinder in the regions between the closed ends thereof and the rib-like portion of the motion transfer element to seal the piston in portions of the cylinder and define closed cylinder chambers therein, wherein the motion transfer element includes a yoke extending laterally over the cylinder at the outside thereof;

interengaging guide track—guide element means are provided on the cylinder and the yoke of the motion transfer element, respectively, positioned at the outer surfaces of the cylinder between an end surface of the cylinder spanned by said yoke, and a transverse axis of symmetry of the cylinder *to provide for lateral support of the portions of the cylinder separated by the slit and spanned by the yoke;* and

wherein the interengaging guide track—guide element means comprises guide grooves and guide strips matching, in cross section, the shape of the guide tracks.

The issues of infringement and utility turned on application to the accused structure of the emphasized words of the penultimate claim clause, which in turn required determination of the meaning to be given to these words in the context in which they are used. Trial was to a jury. Judgment on some issues was entered on special verdicts, and for some issues the district court decided the ultimate question based on the jury's answers to interrogatories.

## Standard of Review

■■■ The standard of appellate review, upon denial or grant of judgment n.o.v., is whether in light of all the evidence and on correct instructions of law, a reasonable jury could have reached the verdict reached by this jury. Upon motion for judgment n.o.v., and on appellate review, the court will disturb the verdict "only if the evidence so conclusively favors [the moving party] that reasonable jurors could not arrive at a contrary verdict." *Krause v. Dresser Industries, Inc.*, 910 F.2d 674, 677 (10th Cir.1990).[2] *See also, e.g., Rainbow Travel Service, Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1241 (10th Cir.1990); *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 982, 10 USPQ2d 1338, 1341 (Fed.Cir.1989). Thus the appellate court reviews the evidence in order to determine whether there was substantial evidence in support of the jury's verdict. *Kitchens v. Bryan County National Bank*, 825 F.2d 248, 251 (10th Cir.1987); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1084–85 (Fed.Cir.1986). Substantial evidence is such relevant evidence, in the record as a whole, as might be accepted by a reasonable mind as adequate to support the verdict under review. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136 (1985). The jury's verdict must stand unless the evidence is of such quality and weight that reasonable persons in the exercise of impartial judgment could not have returned that verdict. *Zimmerman v. First Federal Savings & Loan Assoc.*, 848 F.2d 1047, 1051 (10th Cir.1988) ("we may find error only if the evidence points one way and is susceptible to no reasonable inferences supporting the party for whom the jury found"); *Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1052 (Fed.Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987).

## Infringement

■■■ Proma asserts that the jury, in order to have reached its verdicts of non-infringement and non-utility, necessarily interpreted the claim words "to provide for lateral support of the portions of the cylinder separated by the slit and spanned by the yoke" as meaning that the yoke must prevent all widening of the slit during use, when the widening is due to internal pressure. Tol–O–Matic agrees with this view of the jury verdict; indeed, this is the position Tol–O–Matic pressed at trial. Proma states that this claim interpretation is incorrect, and that the claim as correctly interpreted requires only some degree of resistance to slit widening due to either internal pressure or side loading. Proma requests that this court correctly interpret the claim, and either remand for a new trial on our corrected claim interpretation, or hold that infringement must be found on the corrected claim interpretation and the undisputed facts.

■■■ The interpretation of claims is defined as a matter of law based on underlying facts. *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037, 4 USPQ2d 1450, 1452–53 (Fed.Cir.1987); *Tandon Corp. v. United States International Trade Commission*, 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987); *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed.Cir.1987); *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656, 229 USPQ 992,

---

2. In order to avoid unnecessary conflict, the Federal Circuit applies the procedural law of the forum in which the case was tried. We have discerned no significant difference between the Tenth Circuit's standard of review of jury procedures and that expounded by the Federal Circuit.

994 (Fed.Cir.1986). Interpretation of the claim words "provide for lateral support" required that the jury give consideration and weight to several underlying factual questions, including in this case the description of the claimed element in the specification, the intended meaning and usage of the claim terms by the patentee, what transpired during the prosecution of the patent application, and the technological evidence offered by the expert witnesses. When the meaning of a term in a patent claim is unclear, subject to varying interpretations, or ambiguous, the jury may interpret the term en route to deciding the issue of infringement. The jury's verdict of noninfringement is reviewed, in accordance with the rules governing review of jury determinations, to ascertain whether reasonable jurors could have interpreted the claim in a way that supports the verdict. *Snellman v. Ricoh Co., Ltd.*, 862 F.2d 283, 288, 8 USPQ2d 1996, 1999–2000 (Fed.Cir.1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 707 (1989) (substantial evidence supported jury's apparent claim interpretation, in view of expert testimony and the language of the specification), *Vieau v. Japax, Inc.*, 823 F.2d 1510, 1515–17, 3 USPQ2d 1094, 1098–99 (Fed.Cir. 1987) (reviewing trial evidence and testimony to determine whether a reasonable juror could have reached certain special verdicts interpreting disputed claim language); *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1200–02, 1 USPQ2d 2052, 2054–56 (Fed.Cir.1987) (reviewing evidence on reasonable jury standard, rejecting argument that trial court was required to determine the scope and construction of the claim); *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974, 226 USPQ 5, 8 (Fed.Cir.1985) (when meaning of a claim term is disputed "then an underlying factual question arises, and construction of the claim should be left to the trier or jury under appropriate instruction"); *Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 607, 222 USPQ 654, 656–57 (Fed.Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984) (appellate court reviews whether reasonable jurors could have made the jury's presumed or express

findings, and whether the legal conclusions implied from the verdict can be supported by the findings) (citing *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)); *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984) (when meaning of a term in the claim is disputed and extrinsic evidence is needed to explain it, construction of claim is left to the jury, and the jury "cannot be directed to the disputed meaning"). As did the district court in the case at bar, following Tenth Circuit and Federal Circuit procedures, it is proper to instruct the jury as to the principles of law to be applied, to guide the jury in its application of the law to the facts:

> Where there is a mixed question of fact and law as the trial court was submitting to the jury here, it is proper to guide the jury by reference to these principles.

*Hartford Steam Boiler Inspection and Insurance Co. v. Schwartzman Packing Co.*, 423 F.2d 1170, 1174 (10th Cir.1970). *See also, e.g., Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197 (Fed.Cir.1983) (it is not error to submit a question of law to the jury, together with appropriate instructions on the law from the trial judge).

The jury instructions, not challenged on appeal, included the instruction that the meaning of claim 25 must be determined, and that all relevant documents, including the patent specification, the drawings, and the prosecution history should be considered. The jury was instructed that it should then apply the claim as interpreted, to determine whether the accused device embodied all of the elements of the claim:

> ... you must apply the claims to the accused cylinders; that is, determine if the accused cylinders include each and every element of claim 25.

There was conflicting testimony and argument at trial, on the meaning of the claim as it related to resistance to widening of the slit. For example, the specification tended to support the claim interpretation

pressed by Proma, while the prosecution history tended to support the interpretation urged by Tol–O–Matic; and tests conducted by the technical experts tended to show that the device did not work precisely as Proma had argued during patent prosecution.

Witnesses explained these aspects at the trial. The patent specification states, as Proma argues, that the yoke and groove structure resists slit widening, and does not distinguish between slit widening due to internal pressure and that due to side loading. Proma stresses that claim 25 does not recite the cause of slit widening that is prevented, or require the total elimination of all widening from all causes. However, Proma had told the patent examiner that what distinguished the Kaiser yoke and groove structure from the prior art was the Kaiser structure's resistance to slit widening due to internal pressure; at least, Tol–O–Matic's patent expert so interpreted the following statement:

> It is clearly apparent that the structure of the German reference ['605] or of Hoffar can never achieve this aim; the *additional* lateral guide rods do not permit placing a compressive force on the cylinder by a yoke. Claim 25 is clearly directed to a structure in which compressive force is obtained. [Kaiser's emphasis]

Proma had made this argument to the patent examiner to overcome the Hoffar and German '605 references which described cylinders having a yoke running along guide rods spaced apart from and parallel to the cylinder. Tol–O–Matic's expert explained to the jury that Proma told the examiner that the Hoffar and the German '605 structures were capable only of resisting slit widening due to side loads. Tol–O–Matic's expert also interpreted the arguments in the prosecution history, such as:

> ... the purpose to be achieved in accordance with the present invention is clearly impossible to achieve by Hoffar—namely that the cylinder itself is clamped in the region where the motion transferring rib ... passes through the slit[,]

as meaning that Proma represented to the examiner that *all* slit widening is eliminated. Supporting this meaning is the examiner's explanation of why claim 25 was allowed:

> The examiner agrees with the assertions by counsel that neither the Hoffar or German patents show a guide track element on the cylinder surface that is engaged by the yoke to provide lateral support for the cylinder in the area of the slit. The parallel guide rods shown in both Hoffar and the German patent are not formed on the surface of the cylinder and thus *do not provide the claimed lateral support to prevent widening of the slit opening when pressure is applied* to the cylinder. [Emphasis added.]

A reasonable jury could have concluded that patentability turned on the prevention of substantially all widening of the slit due to internal pressure.

The jury also heard the testimony of technical experts for both sides. The experts had tested the accused Tol–O–Matic cylinders, and also Lintra cylinders manufactured by Norgren in accordance with the Kaiser patent, to determine their resistance to slit widening due to internal pressure. Proma's technical expert, Dr. McDonald, tested the cylinders at higher than normal operating pressures. His results were that both the Tol–O–Matic and the Lintra cylinders reduced somewhat the slit widening due to internal pressure, as the bolts on the yoke were tightened. On the Tol–O–Matic cylinder, the reduction in slit widening was less than that in the Lintra cylinder (0.002 inch reduction compared to 0.007 inch). In both cases this reduction was obtained only when the yoke was tightened to a setting that came "very close to failing those bolts." Dr. McDonald testified that resistance to slit widening would "continue to increase" on using stronger bolts and increasing the tightness of the yoke, but he did not do so in his tests.

Tol–O–Matic's expert Dr. Wormley also measured slit widening due to internal pressure. For the Tol–O–Matic cylinder, his results were that in order to obtain a

0.0001 inch decrease in slit widening, he had to tighten the bolts such that it took "full pressure" to move the piston. (Dr. McDonald and Dr. Wormley tested cylinders of different lengths (8 feet and 26 inches, respectively), accounting for the differing magnitudes of their results.) Mr. Rosengren, Tol–O–Matic's manager of engineering, testified that tightening the bolts on the cylinder "too much" would render it "inoperative" and that exceeding the recommended operating pressure would void the product warranty. From this testimony the jury could have concluded that significant prevention of widening due to internal pressure was not actually obtained, at least under normal pressures, in the accused Tol–O–Matic cylinders.

■ On appellate review we consider all the evidence in the light most favorable to the jury verdict, including reasonable inferences drawn from the evidence. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir. 1983). When the question of infringement turns on the interpretation of the claim, we review whether a reasonable jury could have interpreted the claim in a way that supports its finding on the question of infringement, *McGill*, 736 F.2d at 672, 221 USPQ at 948; that is, whether a reasonable jury could have reached the verdict reached by this jury. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 618–19, 225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

Proma stresses on appeal that its representations to the patent examiner in connection with the German '605 and Hoffar references required only resistance to, not total prevention of, slit widening. Proma states that the results of both technical experts, showing some reduction in slit widening in the Tol–O–Matic cylinders, supports this interpretation. Proma stresses that the claim itself does not require that slit widening be entirely eliminated.

■ We have reviewed the record and conclude that the jury, hearing the conflicting opinions of patent experts for each side, and having the specification and prosecution history before it, could have reached the verdict of noninfringement. A reasonable jury could have found that Proma obtained allowance of claim 25 on the basis that the Kaiser structure provided major reduction, if not elimination, of slit widening due to internal pressure, and that this was the meaning of the "lateral support" claim clause. A reasonable jury could also have concluded, from the technical experts' evidence, that unless the accused Tol–O–Matic cylinders were adjusted to an unworkable tightness of the yoke, significant reduction of slit widening due to internal pressure was not obtained. Thus, a reasonable jury could have concluded that in normal operation the Tol–O–Matic cylinders did not meet the "lateral support" claim limitation. The jury was correctly instructed that "the absence of even one [claim] element avoids infringement."

The judgment that claims 25–31 are not infringed by the Tol–O–Matic BC–100 series pneumatic cylinder products is affirmed.

### Utility

■ The jury found that the subject matter of claim 25 was "not useful". On this finding, the district court held claims 25–31 invalid for failure to meet the utility requirement of 35 U.S.C. § 101.[3]

By § 101 there is excluded from the patent system such things as scientific theories, pure mathematics, and laws of nature. *Diamond v. Diehr*, 450 U.S. 175, 185, 101 S.Ct. 1048, 1056, 67 L.Ed.2d 155, 164, 209 USPQ 1, 7 (1981). Section 101 has also been interpreted to exclude inventions deemed to be immoral, such as (until 1977) gambling machines, or devices deemed to be scientifically impossible, such as perpetual motion machines. As explained by our predecessor court:

---

**3.** 35 U.S.C. § 101. Whoever invents or discovers any new and useful ... machine ... may

obtain a patent therefor....

All that the law requires is that the invention should not be frivolous, or injurious to the well-being, good policy, or good morals of society. The word *useful* therefore is incorporated into the act in contradistinction to mischievous or immoral.

*In re Nelson*, 280 F.2d 172, 178–79, 47 CCPA 1031, 1040–42, 126 USPQ 242, 249 (1960) (emphasis in original) (citing *Lowell v. Lewis*, 15 Fed.Cas. 1018, No. 8568 (C.C.Mass.1817) (Story, J.)).

█ Accepting that the jury must have found that the device did not work as Proma had argued in distinguishing the prior art, this is not an issue of lack of utility. It is undisputed that the Kaiser invention is directed to subject matter expressly included in § 101, and meets the requirements of *In re Nelson, supra.* It is not required that a particular characteristic set forth in the prosecution history be achieved in order to satisfy § 101. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 958, 220 USPQ 592, 598 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984). On the evidence adduced, a reasonable jury could not have found the "total incapacity" that is required to prevail on a lack of utility defense under § 101. *Moleculon Research Corp. v. CBS Inc.*, 793 F.2d 1261, 1269, 229 USPQ 805, 811 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987). The judgment that claims 25–31 are invalid under § 101 is reversed.

### Inequitable Conduct

█ The jury answered several interrogatories on the factual elements of materiality and intent. The jury found that Proma made material misrepresentations during patent prosecution, that Proma acted with "gross negligence or gross recklessness", and that Proma did not intend to deceive the patent examiner. The jury was not asked to decide the ultimate question of inequitable conduct. Based on these findings, the district court held claims 25–31 of the Kaiser patent invalid for inequitable conduct.

█ A trial judge has broad discretion in trial management, including choice of general or special jury verdicts, and/or interrogatories. *Martinez v. Union Pacific R. Co.*, 714 F.2d 1028, 1032 (10th Cir.1983); *Allen Organ Co. v. Kimball International, Inc.*, 839 F.2d 1556, 1561, 5 USPQ2d 1769, 1773 (Fed.Cir.), *cert. denied*, 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988); 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2505 (1971). Thus although the jury was not precluded from deciding the ultimate question of inequitable conduct, in this case the district court undertook to do so. We review the court's ruling on the standard of abuse of discretion; that is, was the conclusion contrary to law, in clear error, unsupported by the evidence, or otherwise in excess of the court's discretionary authority. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (*en banc*), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

█ Proma argues that the district court's ruling is contrary to law, in light of the jury's finding that intent to deceive had not been proved. Proma is correct that gross negligence or gross recklessness alone, absent culpable intent, does not provide sufficient basis for a holding of inequitable conduct. *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439, 17 USPQ2d 1834, 1841 (Fed.Cir. 1991); *Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1392.

█ Tol–O–Matic argues that it is incorrect to state that the jury found no intent; that the jury simply found that intent to deceive had not been proved by clear and convincing evidence, but that the jury findings did establish a sufficient threshold level of intent, which the district court correctly balanced against the jury's finding of materiality, citing *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir.1984). The question of intent revolved around the Hoffar reference, which Proma called to the examiner's attention after allowance of the claims, following which the examiner re-

opened prosecution. There was evidence that Kaiser's German patent attorney knew of the Hoffar reference, and believed that it was merely cumulative to the prior art already before the U.S. examiner; that the German attorney responded promptly to the request by his U.S. patent attorney for all references cited in other countries; and that after receiving these references, which included Hoffar, the U.S. attorney promptly cited Hoffar to the PTO. There was evidence that the PTO, investigating the charge of inequitable conduct, found that Hoffar was merely cumulative to other references already of record. On this evidence, a reasonable jury could have found that intent to deceive or mislead had not been proved. Inequitable conduct carries the consequence of permanent unenforceability of the patent claims. Forfeiture is not favored as a remedy for actions not shown to be culpable. *Jones v. New York Guaranty & Indemnity Corp.*, 101 U.S. (11 Otto) 622, 628, 25 L.Ed. 1030 (1879) ("equity abhors forfeitures"). Thus the requirement of clear and convincing proof of the factual predicates of inequitable conduct is an essential safeguard. *See, e.g., Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939, 15 USPQ2d 1321, 1327 (Fed.Cir.) ("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required."), *cert. denied,* —— U.S. ——, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990). To the extent that *J.P. Stevens* may be interpreted otherwise, it was overruled by the court's *en banc* holding in *Kingsdown.*

Tol–O–Matic argues that the finding of gross negligence or gross recklessness (these categories were not separated in the jury interrogatory) suffices in this case to support a finding of inequitable conduct. However, the jury's specific finding that intent to deceive had not been established, although gross negligence had been, is not a trivial distinction. A reasonable jury could have drawn this distinction, on the evidence before it. Since intent to deceive

the patent examiner is an essential factual predicate to inequitable conduct, the finding that intent had not been proved bars the ruling of inequitable conduct. The judgment of inequitable conduct is reversed.

### The Cross–Appeal

Tol–O–Matic appeals the denial of its motions to amend the judgment to hold that claims 1–24 and 32 of the Kaiser patent are not infringed and are unenforceable.

### A.  Infringement

■ In this declaratory judgment action, Tol–O–Matic as complainant alleged that it did not infringe any claims of the Kaiser patent. These allegations were denied in Proma's answer. By counterclaim, Proma alleged that Tol–O–Matic's cylinders were "within the scope of" the Kaiser patent.

The evidence and argument at trial were directed only to the subject matter of claim 25. Tol–O–Matic requested no jury findings on any but claim 25, which the parties stipulated was representative of claims 25–31. Claims 1–24 relate to a specific slit sealing arrangement described in the Kaiser patent, and claim 32 requires rolling contact between the guide elements and the guide track. No evidence was introduced at trial concerning these claims. Tol–O–Matic now asserts that claims 1–24 and 32 were placed in issue by the pleadings, and that since Proma, having the burden of proof on infringement, offered no evidence of infringement of these claims, the judgment of noninfringement should have included these claims.

■ Pleadings do not suffice to support a judgment when the subject matter was not litigated, or fairly placed in issue, during the trial. *See Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 327, 227 USPQ 838, 844 (Fed.Cir.1985) (patent claims not at issue were improperly declared invalid). There must be sufficient and explicit notice of the claims at risk. When the pleadings are not in complete harmony with the issues that were litigated and adjudicated, it

is the pleadings that may be conformed to the judgment, not vice versa.

The district court correctly denied Tol–O–Matic's motion that the court hold that claims 1–24 and 32 are not infringed.

### B. Enforceability

Tol–O–Matic also appeals the district court's denial of its motion to hold all the claims unenforceable due to the court's finding of inequitable conduct. Proma, in response, requests that we revisit the Federal Circuit's ruling that a finding of inequitable conduct as to any claim in suit renders unenforceable all claims not in suit. This issue is now mooted by our reversal of the holding of inequitable conduct. On this basis, the district court's denial of Tol–O–Matic's motion is affirmed.

### Other Issues

In view of our affirmance of the judgment of noninfringement of claims 25–31, the jury's determination of a reasonable royalty and other issues not treated in this opinion are mooted, and the portion of the judgment based thereon is vacated.

No costs.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART