52 F.3d 342
 34 U.S.P.Q.2d 1789
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CONCEPT DESIGN ELECTRONICS AND MANUFACTURING, INC.,
Plaintiff/Counterclaim Defendant-Appellee,
v.
DUPLITRONICS, INC., Defendant/Counterclaim Plaintiff-Appellant.
 No. 94-1264.
 United States Court of Appeals, Federal Circuit.
 Jan. 17, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Feb. 21, 1995.
 
 Before MAYER, MICHEL and SCHALL, Circuit Judges.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 Duplitronics, Inc. appeals the March 3, 1994 order of the District Court for the Western District of North Carolina denying its motion for judgment as a matter of law, or alternatively, for a new trial, filed after a bifurcated jury trial involving two separate juries. Docket Nos. C-C-91-169-P and C-C-90-368-P. In the first phase of that litigation, the jury found that two patents assigned to and asserted by Duplitronics were unenforceable, invalid and not infringed by Concept Design Electronics and Manufacturing, Inc. In the second phase, another jury found that Duplitronics had violated North Carolina unfair competition laws by asserting its patents in bad faith. Because we conclude the district court did not abuse its discretion by entering judgment that Duplitronics' patents are unenforceable for inequitable conduct, and because the jury verdicts on validity, infringement and unfair competition are supported by substantial evidence, making the judgments entered thereon lawful, we affirm.
 
 DISCUSSION
 I. Background
 
 2
 In November 1990, Concept Design filed a declaratory judgment action to declare invalid and unenforceable U.S. Patent 4,410,917 (the Newdoll patent), assigned to Duplitronics. Duplitronics filed a counterclaim alleging infringement of that patent. Concept Design then requested that the Patent and Trademark Office (PTO) reexamine the Newdoll patent in light of newly discovered prior art. The case was stayed pending a decision by the PTO which allowed several of the original claims as well as other claims submitted in the re-examination as amended or new claims.
 
 
 3
 U.S. Patent 5,021,893 (the Scheffler patent), assigned to Duplitronics, issued in June 1991. Concept Design immediately filed a declaratory judgment action to declare that patent invalid and unenforceable. Duplitronics filed a counterclaim alleging infringement of the Scheffler patent. The suits involving the Newdoll and Scheffler patents were consolidated. Both patents in suit relate to apparatus and methods for commercially duplicating audio cassette tapes.
 
 
 4
 A jury trial was held in March 1993 in which the jury decided all issues for Concept Design, finding that Duplitronics' Newdoll and Scheffler patents were invalid, unenforceable and not infringed. Duplitronics moved for judgment as a matter of law (JMOL) or, alternatively, a new trial, pursuant to Federal Rule of Civil Procedure 50(b). The district court denied that motion.
 
 
 5
 A second jury trial was held in November 1993 on Concept Design's claim that Duplitronics had violated North Carolina unfair competition laws and to determine damages, if any, to Concept Design. This phase of the litigation had been bifurcated from the first at Duplitronics' request. Concept Design presented two theories of unfair competition at trial: 1) Duplitronics' alleged fraud on the PTO during prosecution of the Scheffler patent and the re-examination proceeding concerning the Newdoll patent; and 2) Duplitronics' enforcement of the two patents, allegedly done with no reasonable belief that the patents were infringed. The jury found for Concept Design on the theory that Duplitronics had asserted the Scheffler and Newdoll patents in bad faith and awarded $300,000 in damages, which the district court trebled. After the district court entered a final judgment on both phases of the litigation, including a judgment that the two patents were unenforceable for inequitable conduct, Duplitronics' filed a JMOL motion which the court denied. Duplitronics appeals that denial here.
 
 
 6
 II. The November Verdict did not Impliedly Acquit Duplitronics of Inequitable Conduct
 
 
 7
 Duplitronics argues that the second jury effectively acquitted it of inequitable conduct. The jury of the first trial was asked to determine whether the patents were "unenforceable" based on either of two separate grounds, misuse or inequitable conduct. Jury instructions were provided on both theories. According to Duplitronics, the first jury found only "unenforceability" which could have been based on misuse rather than inequitable conduct. Duplitronics further asserts that, because the first jury verdict was ambiguous, it does not establish the law of the case regarding inequitable conduct. As the final step in its argument, Duplitronics maintains that the second jury acquitted Duplitronics of inequitable conduct by unambiguously finding that Duplitronics had not been shown to have committed fraud on the PTO.
 
 
 8
 Duplitronics is correct that the March special interrogatory asked the jury to decide only whether the Newdoll and Scheffler patents were "unenforceable." It is also true that the March jury was instructed that a patent is rendered unenforceable by either inequitable conduct or misuse. Moreover, the partial judgment entered by the district court on April 19, 1993, following the first phase of the litigation, decreed only that the patents were "unenforceable." Thus, we agree there was some ambiguity regarding the grounds on which the first jury rested its verdict of "unenforceability."
 
 
 9
 However, the district court entered its final judgment on November 17, 1993, after the second phase of the litigation, decreeing that the Newdoll and Scheffler patents "are unenforceable as a matter of law as a result of inequitable conduct." In spite of the ambiguity in the first jury's verdict, the district court acted appropriately in entering this judgment, given that "the decision respecting inequitable conduct is a discretionary decision to be made by the judge on his or her own factual findings." Paragon Podiatry Lab. v. KLM Lab., 984 F.2d 1182, 1190, 25 USPQ2d 1561, 1568 (Fed.Cir.1993). Thus, the district court had authority for its findings and judgment independent of the jury verdict, whichever theory it was based on.
 
 
 10
 "We review the court's ruling [of inequitable conduct] on the standard of abuse of discretion; that is, was the conclusion contrary to law, in clear error, unsupported by the evidence, or otherwise in excess of the court's discretionary power." Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg., 945 F.2d 1546, 1553, 20 USPQ2d 1332, 1338 (Fed.Cir.1991). In Duplitronics' view, the district court abused its discretion in entering a judgment of unenforceability for inequitable conduct after the second jury found, in the words of the November interrogatory, that Concept Design had not proven by clear and convincing evidence that Duplitronics "committed fraud on the Patent Office while acquiring either patent that it later attempted to enforce against Concept Design." We disagree.
 
 
 11
 First we note that this litigation was bifurcated, at the request of Duplitronics, into the first phase addressing claims of invalidity, unenforceability and infringement, and a second phase addressing the unfair competition claim and damages. Duplitronics acknowledges that the two trials addressed different issues--the first trial addressed inequitable conduct whereas the second addressed fraud on the PTO. Thus, inequitable conduct was tried, once and for all, in the first trial. We conclude that the district court did not abuse its discretion by entering a final judgment of unenforceability due to inequitable conduct based on evidence presented in the first trial. The outcome of the unfair competition claim based on fraud, determined by the second trial, is simply irrelevant to the outcome of the inequitable conduct claim heard at the first trial. Any other result would allow a party to try the same issue twice by requesting bifurcation, thereby violating the purpose of bifurcation, conservation of judicial resources and simplification of issues. Thus, Duplitronics is judicially estopped from first seeking separation, but later merger of those issues. See Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900-01, 221 USPQ 669, 678-79 (Fed.Cir.), cert. denied, 469 U.S. 857 (1984) (applying the law of the case doctrine to prevent relitigation of issues).
 
 
 12
 Second, because the legal standards for proving fraud are more stringent than those for demonstrating inequitable conduct, the court's finding that Duplitronics committed inequitable conduct is not inconsistent with the second jury's finding that the company did not commit fraud. In comparable circumstances we have stated:
 
 
 13
 When a party seeks to collect monetary damages from a patentee because of alleged violations of the antitrust law, it is appropriate to require a higher degree of misconduct for that damage award than when a party asserts only a defense against an infringement claim.
 
 
 14
 Hewlett-Packard Co. v. Bausch & Lomb Inc., 882 F.2d 1556, 1563, 11 USPQ2d 1750, 1756 (Fed.Cir.1989), cert. denied, 493 U.S. 1076 (1990); Argus Chemical Corp. v. Fibre Glass-Evercoat Co., 812 F.2d 1381, 1384-85, 1 USPQ2d 1971, 1973-74 (Fed.Cir.1987) ("knowing and willful fraud ... can mean no less than clear, convincing proof of intentional fraud involving affirmative dishonesty").
 
 
 15
 Duplitronics nevertheless asserts that the corresponding jury instructions in the two trials were almost identical, and, therefore, that the second jury found, by necessary implication, that Duplitronics did not intend to deceive or knowingly conceal a material fact. Actually, the jury instructions properly differed in an important aspect. In the second trial, the court instructed the jury that "Concept Design must show fraud involving affirmative dishonesty." Consistent with the law of inequitable conduct, there was no such requirement in the jury instructions of the first trial. Thus, the two verdicts are consistent and the second cannot be said to alter the first.
 
 
 16
 Third, two separate juries reviewed different evidence to find different facts on different instructions. Although the parties disagreed at oral argument about the extent to which the evidence in the two trials overlapped, the fact that the evidence was not identical is sufficient by itself to justify the different verdicts on the related issues of unenforceability and fraud, making the two verdicts consistent. Even if the verdicts were not consistent, the jury verdict concerning fraud cannot alter the judgment concerning inequitable conduct when the two issues are decided in separate trials.
 
 
 17
 For these reasons and upon a review of the evidence, we hold that the district court did not abuse its discretion by entering judgment that the Newdoll and Scheffler patents are unenforceable, as a matter of law, for inequitable conduct.
 
 III. Duplitronics' Other Arguments
 
 18
 Duplitronics also challenges, as unsupported by substantial evidence, the jury verdicts on validity, infringement and unfair competition. See Tol-O-Matic, Inc., 945 F.2d at 1549, 20 USPQ2d at 1335 (in reviewing a denial of a JMOL motion, we must determine whether there was substantial evidence to support a jury verdict). Because we regard Duplitronics' arguments on these issues, like those concerning inequitable conduct, as unpersuasive in light of the record as a whole, we reject them.