135 F.3d 778
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CURTIS MANUFACTURING COMPANY, INC., Plaintiff-Appellant,
v.
PLASTI-CLIP CORPORATION and Daniel Faneuf, Defendants-Cross
Appellants.
PLASTI-CLIP CORPORATION and Daniel Faneuf, Plaintiffs-Cross-Appellants,
v.
Thomas W. JUDD, Defendant-Appellant.
 Nos. 96-1048, 96-1055, 96-1059.
Feb. 6, 1998.
 
 Before RICH, PLAGER, and CLEVENGER, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 Before us for resolution are three appeals in two suits, which were consolidated, involving two patents: U.S. Patent No. 4,277,863 ('863 patent), entitled "Identification Card Holder," issued to Daniel Faneuf (Faneuf) and U.S. Patent No. 4,902,078 ('078 patent), entitled "Document Holder Clip," naming Thomas W. Judd (Judd) as inventor, which issued to assignee Curtis Manufacturing Company, Inc. (Curtis). Briefly, the Faneuf patent describes a clip used to attach an identification badge to an item of clothing. The Curtis patent describes a clip for holding documents attached to the side of a word processor for viewing by the operator. DP On September 8, 1989, Curtis filed a declaratory judgment action against Plasti-Clip and Faneuf in the United States District Court for the District of New Hampshire, alleging that the Curtis clip does not infringe the '863 patent and that each claim of the '863 patent is invalid, void, and unenforceable.[1] Based on Faneuf's claim that he actually invented the Curtis clip, Plasti-Clip and Faneuf counterclaimed for infringement of the '863 patent and/or Curtis's own '078 patent, fraudulent procurement of the '078 patent, violation of federal and New Hampshire antitrust laws, violation of New Hampshire prohibitions on unfair trade practices, as well as a common law claim for conversion/idea misappropriation.[2] Plasti-Clip attempted to add Judd, the president of Curtis, as a third party defendant. After the district court denied this motion, Plasti-Clip brought a separate action against Judd, asserting claims similar to its claims against Curtis. Judd counterclaimed for a declaratory judgment of invalidity and noninfringement of the '863 patent. The two cases were consolidated for trial. The District Court of New Hampshire entered an amended judgment on October 12, 1995 on special jury verdicts returned on May 15, 1995 finding that:
 
 
 2
 (1) Curtis infringed claims 1, 4, and 5 of the '863 patent issued to Faneuf;
 
 
 3
 (2) The '863 patent is not invalid under 35 U.S.C. §§ 102 or 103;
 
 
 4
 (3) Curtis, with the assistance of Judd, had converted the '078 patent, issued to assignee Curtis listing Judd as the sole inventor, because the jury found Faneuf was the sole inventor of the '078 patent;
 
 
 5
 (4) Curtis misappropriated a confidential idea from Faneuf or Plasti-Clip Corporation, a small corporation owned by Faneuf; and
 
 
 6
 (5) Curtis engaged in unfair competition against Plasti-Clip or Faneuf.
 
 
 7
 After the district court entered judgment on the special jury verdicts, both parties brought several post-trial motions. Curtis and Judd both filed for judgment as a matter of law (JMOL), or alternatively, for new trials or to alter and amend judgment. In these motions, Curtis and Judd attacked the finding of infringement of the '863 patent. Neither attacked, however, the district court's instructions to the jury or the district court's interpretation of the claims of the '863 patent. On these post-trial motions, the district court ruled that the finding of infringement of the '863 patent was supported by sufficient corroborative evidence because the jury had before it a written disclosure, a mock prototype, and drawings which had been prepared by Faneuf. Curtis Mfg. Co. v. Plasti-Clip Corp., Civil No. 89-430-SD and 92-360-SD, slip op. at 14-15 (D.N.H. Sept. 14, 1995). The district court also found on post-trial motions that the doctrine of conversion was applicable to a patent; that there was sufficient evidence for the jury to find a confidential relationship between Faneuf and Curtis and misappropriation of confidential information; and that there was sufficient evidence to find unfair competition.[3]
 
 
 8
 The district court gave Plasti-Clip and Faneuf a choice between assignment of the '078 patent and damages for such conversion because it found that the award of both constituted double damages. Plasti-Clip and Faneuf chose damages.
 
 
 9
 The district court awarded $645,961.30 plus interest at the rate of 6.28 percent against Judd for assistance in the conversion of the '078 patent, and awarded Plasti-Clip and Faneuf a total of $293,891.98, plus interest thereon, against Curtis: $79,809.48 for infringement of the '863 patent; $200,982.50 for conversion of the '078 patent; $13,000.00 for misappropriation of a confidential idea; and $100.00 for unfair competition.
 
 
 10
 We reverse.
 
 
 11
 Both parties appeal on myriad issues. Because we hold that Faneuf is not an inventor of the claimed subject matter of the '078 patent and the Curtis clip does not infringe the '863 patent, we need not reach many of the issues on which the parties appeal. Therefore, we will first address these two issues.
 
 Background
 
 12
 To determine whether Faneuf is the sole or a co-inventor of the invention claimed in the '078 patent, we must examine Faneuf's invention as claimed in his '863 patent and the circumstances surrounding his interaction with Curtis and Judd during the development of the invention claimed in the Curtis-Judd '078 patent of which Faneuf claims to be the sole inventor. They are briefly summarized below.
 
 
 13
 Faneuf testified that he first conceived of the invention involving a clipping element used to attach an identification badge to an item of clothing as claimed in the '863 patent in late 1978. Figures 1 and 2 of the clip from the '863 patent are shown below:
 
 
 14
 Fig. 1 shows the clip in open position ready to receive a badge or the like and Fig. 2 shows it closed and in use. The plastic clip members 1 and 2 are integrally joined by a flexible web 3 which acts as a hinge. The jaws 4 are to grip the clothing 5 when the spring finger 7, 8 is pushed beneath the flange 6 on the end of member 1, closing the jaws 4 as shown in Fig. 2. Finger 7, 8 forms a loop which opens and closes and from which a card 11 with an opening 9 can be hung. It also acts as the spring which holds the jaws 4 closed, thus performing a dual function.
 
 
 15
 Faneuf asserts that a garment clip that he developed in the mid 1980's is covered by the claims of the '863 patent. It is this garment clip that Faneuf later provided to Curtis for use with the Curtis document holder, which forms the basis for his inventorship claim.
 
 
 16
 Curtis manufactures and sells computer accessory products. In the 1980's, Judd, one of the original founders of Curtis, originated the idea of a document holder and did the initial work on developing the product. Judd obtained a design patent on May 9, 1989, U.S. Patent No. Des. 301,044, which was assigned to Curtis, on his ornamental design for the adjustable document holder clip. The design is shown below:
 
 
 17
 In 1988, Judd realized that the Curtis clip would not always clamp sufficiently to hold only one or two sheets of paper. Judd instructed Mr. Edward Hames (Hames), Curtis's product development manager, to find a clip that would solve the problem. Judd testified that he asked for a double-sided clip that would slide along the length of the Curtis document arm and be wide enough to span the holes in the arm.
 
 
 18
 Hames originally showed a barrel clip to Judd around Christmas of 1988. Hames testified that Judd slid the barrel clip on the Curtis arm of the document holder, and stated that he wanted slidability of the clip on the entire arm so that the clipping element would be adjustable.
 
 
 19
 About a month after this conversation with Judd, one of Curtis's mold producers showed Faneuf's garment clip to Hames. Although Hames stated he was not interested, on May 5, 1989, he called Faneuf because he liked the garment clip's cost effective, one-piece construction. Hames sent Faneuf a sample of the Curtis document arm for which Curtis needed the improved clip. Hames showed the Faneuf garment clip to Judd who testified that he was impressed with the clip because of the spring technology and the one-piece construction.
 
 
 20
 Faneuf testified that after reviewing the Curtis document arm, he believed his garment clip would hold documents on the Curtis arm well. He testified that he attempted to slide the garment clip onto the arm, but the Curtis document arm was too large and spread his garment clip too wide, rendering it ineffective to hold paper. Therefore, Faneuf notched the Curtis arm to accommodate his garment clip by snapping it on.
 
 
 21
 On May 18, 1989, after Faneuf had been informed by Hames' secretary that Curtis was no longer interested in his clip, Faneuf sent Curtis a quote for the stock garment clip manufactured by Plasti-Clip and a second option for a custom design clip using "Plasti-clip's patented design." Faneuf testified that this May 18 presentation was the complete disclosure of his invention.
 
 
 22
 Faneuf testified that the May 18 quotation showed his garment clip mounted in slidable fashion on the Curtis document arm. Faneuf believed that the rail of the Curtis' arm just needed to be sized down to accommodate the clip. Faneuf agreed to meet with Hames the next day, May 19, 1989, and brought the sample Curtis arm modified with notches to accommodate his stock garment clip. Faneuf testified that at that meeting he showed Hames how his garment clip could be snapped on as well as slid onto the Curtis document arm. Hames testified, however, that he, and not Faneuf, brought up the concept of modifying the stock clip to provide for sliding, and he told Faneuf that he needed to talk with his designer, Bob Howitt (Howitt), about designing such a modification. Hames testified that he rejected Faneuf's attempt to sell him the stock, snap-on garment clip.
 
 
 23
 After meeting with Faneuf, Hames showed the stock garment clip to Judd. Judd found it aesthetically unpleasing and stated that he wanted it to slide on the Curtis document arm. When Hames sent the clip to designer Howitt, he instructed him to modify the clip to keep the same look of the current wide Curtis clip and to have it slide along the Curtis arm. Mr. Lou Bakanowsky (Bakanowsky), Curtis' molder, produced such a slidable sample clip from Howitt's design. Although it was aesthetically unpleasing, Hames sent the sample to Faneuf to get a quote on the cost of such a modified clip.
 
 
 24
 On May 26, 1989, Hames provided Faneuf with the Bakanowsky model and the Howitt drawing at Plasti-Clip. On May 31, 1989, Faneuf provided Hames with two choices for the style of the improved clip. Bakanowsky made a model from the chosen Faneuf drawing and also made another Curtis arm with a T-shape flange for sliding the clip. During a meeting on June 7, 1989, Hames testified that Faneuf showed two other quotes with accompanying drawings incorporating Hames suggestions for an improved clip design.
 
 
 25
 At this time, Hames consulted Curtis's patent attorney, Richard Crowley (Crowley), who sent an opinion letter on June 23, 1989, that the original stock garment clip provided by Faneuf was not covered by the '863 patent because it lacked the "open loop disengageable from the other member"--a required element of each claim of the '863 patent. After discussing the patenting of the clip with Judd and deciding that Judd was the inventor despite the confidential legend on Faneuf's June 7 drawings, Curtis filed for a patent. On June 29, 1989, Faneuf and Hames had another meeting at Plasti-Clip where Faneuf asserts that Hames asked him to lower his price per clip or Curtis would design around the clip and pay him nothing.
 
 
 26
 Subsequently, Hames and Faneuf reached an impasse on whether the garment clip was covered by the '863 patent. Faneuf refused to produce a clip for Curtis without the '863 patent marking. On September 6, Hames told Faneuf that Curtis had a patent pending on the modified clip. At this point, the relationship between Curtis and Plasti-Clip ended.
 
 
 27
 The '078 patent issued on February 20, 1990. The drawings showing the Curtis clip and document arm are below:
 
 
 28
 Fig. 1 shows the clip on the Curtis document holder arms 26, 28 where it can hold pages on either side. In Fig. 2 the clip is shown closed and holding a document 18 against a roughened surface 30 on the arm. Fig. 3 shows the clip when opened by squeezing together the top ends of the clip, causing the end 56 of spring finger 50 to slide downwardly along the surface of flange 54 away from retainer stop 52, beyond which the tip 56 of spring finger 50 never goes.
 
 DISCUSSION
 A. INVENTORSHIP OF THE '078 PATENT
 
 29
 The jury found that Faneuf was the sole inventor of the '078 patent. On post trial motion, Curtis and Judd asserted that the district court should hold as a matter of law that Judd was at least a co-inventor of the '078 patent because Faneuf's claims of inventorship lack the required corroboration beyond his oral testimony. The district court found that "[h]ere the jury had before it a written disclosure, a mock prototype, and drawings which had been prepared by Faneuf in May 1989. These evidentiary items were sufficient to permit the jury to find that Faneuf had carried his burden of proving inventorship by clear and convincing corroborative evidence." Curtis Mfg., slip op. at 14-15.
 
 
 30
 A patent carries a statutory presumption of validity. 35 U.S.C. § 282 (1994). Therefore, Plasti-Clip and Faneuf have the burden of establishing by clear and convincing evidence that Faneuf was the sole inventor of the '078 patent. Price v. Symsek, 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1033 (Fed.Cir.1993). An inventor's testimony, standing alone without any corroborating evidence, however, cannot rise to the level of clear and convincing evidence. Id., 26 USPQ2d at 1036.
 
 
 31
 As this court held, "[d]etermining 'inventorship' is nothing more than determining who conceived the subject matter at issue...." Sewall v. Walters, 21 F.3d 411, 415, 30 USPQ2d 1356, 1358 (Fed Cir.1994). Conception and inventorship are questions of law, which we review de novo. Id. Any underlying facts found by the jury, however, we review under the substantial evidence standard. Substantial evidence constitutes such relevant evidence, on the record reviewed as a whole, that could be viewed by a reasonable mind as adequate to support the verdict. Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), cert. denied, 469 U.S. 857 (1984).
 
 
 32
 Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir.1986) (citation omitted).
 
 
 33
 Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation....
 
 
 34
 Thus, the test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. The conception analysis necessarily turns on the inventor's ability to describe his invention with particularity. Until he can do so, he cannot prove possession of the complete mental picture of the invention. These rules ensure that patent rights attach only when an idea is so far developed that the inventor can point to a definite, particular invention.
 
 
 35
 Burroughs Wellcome Co. v. Barr Laboratories, Inc., 40 F.3d 1223, 1228, 32 USPQ2d 1915, 1919 (Fed.Cir.1994) (citations omitted).
 
 
 36
 Claim 1 of the '078 patent, the only independent claim, reads as follows:
 
 
 37
 1. A document holder clip adapted to hold a document adjacent a monitor screen, which comprises in combination:
 
 
 38
 (a) a support bracket means to be secured adjacently to a monitor screen or other fixed support;
 
 
 39
 (b) an extending arm having a one and other end and an upper edge with a front and back surface and having a slightly raised flange elements extending outwardly from the front and rear surfaces and substantially the length of the extending arm and slightly below the upper edge of either side of the arm;
 
 
 40
 (c) means to provide for the pivotable movement of the extending arm at the one end thereof so as to permit the extending arm to be pivotably moved between a use and a non-use position; and
 
 
 41
 (d) a slidably mounted document clip means to retain a document, which holder means comprises:
 
 
 42
 (i) a pair of generally parallel clip arm elements having a one and an other end, that the one end forming opposing jaws on either side of the extending arm;
 
 
 43
 (ii) a resilient hinge means generally intermediate the generally parallel clip arm elements;
 
 
 44
 (iii) a clip retaining means between the clip arm elements and below the hinge means which extend and fit over flanges of the arm to retain the clip means on the arm and to permit the slidable movement along the upper edge of the arm of the document clip in use;
 
 
 45
 (iv) a resilient, bent spring finger at the other end of one of the clip arm elements, the spring finger inclined inwardly toward the hinge means; and
 
 
 46
 (v) a spring finger retainer at the other end of the other arm clip element whereby the one end of the resilient spring finger is engaged in the spring finger retainer so that the opposing jaw elements are biased in closed, inward, document retaining position adjacent to the surface of the extending arm so as to retain a document between at least one jaw end and the surface of the extending arm and whereby upon the application of finger pressure on the ends of the clip arm element, one end of the spring finger moves downwardly toward the hinge means and away from the retaining stop to place the opposing jaws in an open position for the removal of the document.
 
 
 47
 On appeal, Curtis and Judd assert that Plasti-Clip and Faneuf did not establish by clear and convincing evidence that Faneuf is the sole inventor of the '078 patent because Faneuf's May 18, 1989 price quotation and the model shown to Curtis on May 19, 1989 do not disclose every feature of every limitation of the claims at issue.[4] More specifically, Curtis and Judd assert that the quotation and the model did not disclose a slidably mounted document clip means with a T-shaped flange that runs the substantial length of the Curtis arm, a clipping element with a wide bottom and "C" shaped jaws that don't close and which span the openings of the arm. Curtis and Judd argue that, in fact, the notches on the Faneuf May 19 model teach away from the claimed "slidability" of the clip because it shows only a clipping element that is snapped into a fixed, non-sliding position. For instance, at trial, Curtis and Judd assert, Faneuf's clip could be forced to slide on the arm only with considerable difficulty and, when so forced, the clip retaining means prevented the jaws from closing, making it incapable of retaining a document.
 
 
 48
 To conceive the claimed invention, Faneuf had to have conceived of the claimed combination. Faneuf, however, admitted that he did not conceive of the support bracket means limitation, the extending arm limitation, or the means to provide for the pivotable movement of the extending arm in combination with a slidably mounted document clip. Therefore, there is no substantial evidence supporting the verdict that Faneuf was the sole inventor of the '078 patent involving a combination of a support bracket, an extending arm, a means to provide for the pivotable movement of the extending arm, and a slidably mounted document clip.
 
 
 49
 The remaining question is whether Faneuf is a joint inventor of the inventions claimed in any claim of the '078 patent.
 
 
 50
 A joint invention is the product of a collaboration between two or more persons working together to solve the problem addressed. People may be joint inventors even though they do not physically work on the invention together or at the same time, and even though each does not make the same type or amount of contribution. The statute does not set forth the minimum quality or quantity of contribution required for joint inventorship.
 
 
 51
 Burroughs Wellcome Co., 40 F.3d at 1227, 32 USPQ2d at 1919 (citations omitted).
 
 
 52
 Faneuf asserts that there was sufficient evidence at trial for the jury to find corroboration of his inventorship claim to the '078 patent because his May 18 quote and May 19 prototype exhibited all of the essential features of the device claimed in the '078 patent. Faneuf's May 18 quotation and his May 19 model is shown below.
 
 
 53
 Faneuf asserts that both his quote and prototype had a T-shaped flange and that he demonstrated slidability of his clip at trial, both of which are limitations of claim 1 of the '078 patent. The problem with these two assertions is that the T-shaped flange shown in the May 18 quote and on the prototype was taken from an existing Curtis' document arm admittedly not conceived of by Faneuf. Faneuf admitted that the T-shaped flange was on the Curtis document arm as it existed when he received the sample from Hames. In fact, Faneuf had actually notched the Curtis document arm as shown in the top view picture above to accommodate his stock garment clip. The slidability that was demonstrated at trial did not come from Faneuf's garment clip on the May 19 prototype, but from the garment clip as applied to a commercial embodiment of the Curtis Design Patent 301,044. When Faneuf tried to slide his clip on the May 19 prototype, it broke. In fact, Faneuf showed slidability of his garment clip on an inadmissible prototype that had been milled down and made after-the-fact specifically for trial. This hardly provides contemporaneous corroboration of Faneuf's assertion of inventorship on May 19.
 
 
 54
 Faneuf also asserts that Judd admitted that he incorporated Faneuf's "exciting" clip technology into the Curtis clip. The spring technology from the garment clip that Faneuf asserts was incorporated into the claimed invention of the '078 patent is described in the '863 patent as follows:
 
 
 55
 a spring finger on one member at the other side of the hinge resiliently biased into engagement against the other member so as yieldingly to hold the jaws closed, the spring finger forming an open loop disengageable from the other member for insertion through an aperture in an article, whereby the finger serves both as a spring to close the jaws and a holder for the article.
 
 
 56
 '863 patent at col. 2, lines 26-43.
 
 
 57
 The spring finger of the '078 patent calls for:
 
 
 58
 a resilient, bent spring finger at the other end of one of the clip arm elements, the spring finger inclined inwardly toward the hinge means; and a spring finger retainer at the other end of the other arm clip element whereby the one end of the resilient spring finger is engaged in the spring finger retainer so that the opposing jaw elements are biased in closed, inward, document retaining position adjacent to the surface of the extending arm so as to retain a document between at least one jaw end and the surface of the extending arm and whereby upon the application of finger pressure on the ends of the clip arm element, one end of the spring finger moves downwardly toward the hinge means and away from the retaining stop to place the opposing jaws in an open position for the removal of the document.
 
 
 59
 '078 Patent, col. 5, line 34, through col. 6, line 3.
 
 
 60
 The spring finger of the '078 patent as described above does not form a disengageable open loop, as will be set forth more fully in the infringement section of the opinion below. Therefore, we hold as a matter of law that Mr. Faneuf is not a joint inventor of the '078 patent.
 
 
 61
 Because we hold that Faneuf is not an inventor of the '078 patent, we need not reach the issue of conversion of the '078 patent or the state law issues of misappropriation or unfair competition.
 
 
 62
 B. ALLEGED INFRINGEMENT BY CURTIS OF FANEUF'S '863 PATENT
 
 
 63
 The single independent claim of the '863 patent reads as follows:
 
 1. A spring clip comprising:
 
 64
 two elongate, relatively stiff members;
 
 
 65
 a relatively flexible web forming a hinge joining the two members intermediate their ends;
 
 
 66
 opposed jaw portion on respective members at one side of the hinge; and
 
 
 67
 a spring finger on one member at the other side of the hinge resiliently biased into engagement against the other member so as yieldingly to hold the jaws closed, the spring finger forming an open loop disengageable from the other member for insertion through an aperture in an article, whereby the finger serves both as a spring to close the jaws and a holder for the article.
 
 
 68
 To analyze whether the Curtis clip infringes the '863 patent, the court must follow a two step process: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Carroll Touch, Inc. v. Electro Mechanical Sys., 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Neither party disputes that the district court's construction of the claims of the '863 patent was correct. Curtis, however, asserts that as a matter of law, none of the claims of the '863 patent read on the Curtis clip. Therefore, Curtis asserts that as a matter of law under the district court's claim construction, the Curtis clip does not infringe the '863 patent. Plasti-clip and Faneuf assert that the Curtis clip literally infringes the '863 patent, and also infringes under a doctrine of equivalents analysis.
 
 
 69
 Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 117 S.Ct. 1040, 1045, 41 USPQ2d 1865, 1868 (1997). The application of the doctrine of equivalents is "an objective inquiry on an element-by-element basis." Id. at 1054, 41 USPQ2d at 1876.
 
 
 70
 The district court instructed the jury as to its construction of claim 1 of the '863 patent as follows:
 
 
 71
 The limitation of a disengageable open loop ... requires that there be a portion of the spring finger which is separate and identifiable as a loop extended outside a plane defined by the jaw member so that an article can be held by the loop in such a manner as to swing free of the jaws and other elements of the clip and can hang in various orientations so that the loop formed by the spring finger permits an identification card quote, "to be flat on the wearer's clothing where it will not continuously interfere with arm movement," close quote, and that the loop permits the identification card to, quote, "hang parallel to," the hinged members and "flat on the wearer's clothing." You should consider whether the accused device manufactured and sold by Curtis permits an identification card to lie flat against normal light clothing, such as a shirt, blouse, or suit jacket, and whether the card hangs in such a manner that it can be easily read by a guard to ensure that the wearer is authorized to enter a location.
 
 
 72
 The limitation that the loop formed by the spring finger, "serves as a spring to close the jaws," was added to the claim as part of an amendment Mr. Faneuf made to avoid prior art, and that limitation means that the spring finger must operate to ensure that the jaws are closed so firmly that an identification badge may be firmly attached to the hem of one's normal clothing, such as the pocket hem of a shirt, blouse, or lightweight suit jacket and the badge hangs flat on one's clothing. The jaws must be closed in normal operation, not by inserting an arm or other device between the jaws.
 
 
 73
 Similarly, the requirement of the claim that the "spring finger on one member at the other side of the hinge resiliently biased into engagement against the other member so as yieldingly to hold the jaws closed," means that the spring finger must operate to ensure the jaws are closed so firmly that an identification badge may be firmly attached to the hem of one's normal clothing.
 
 
 74
 Curtis and Judd assert that, as a matter of law, under the district court's instructions the Curtis clip lacks any substantial equivalent of three limitations of claim 1 of the '863 patent: (1) jaws that close; (2) dual functionality of the spring finger, i.e., a spring finger that holds the jaws closed and holds an apertured article; and (3) a disengageable open loop. The accused Curtis clip has jaws, Curtis asserts, that do not close completely. A space is left between the jaws to accommodate the extending arm of the document holder and would not close so firmly, Curtis asserts, that an identification badge may be firmly attached to the hem of one's clothing. Also, because the spring finger of the accused Curtis clip is not designed and in normal operation does not "disengage" from the opposing jaw without considerable effort and risk of breakage and cannot hold an apertured article flat against a person's clothing because of a reinforcing element in the underside of the spring finger, it fails to meet the remaining two elements of claim 1 of the '863 patent at issue, namely, a spring finger that holds the jaws closed and holds an apertured article by forming a disengageable open loop.
 
 
 75
 Plasti-Clip and Faneuf counter these arguments by asserting that the requirement in claim 1 of the '863 patent that the jaws be yieldingly held closed does not require that the tips of the jaws touch. Expert testimony that the claim term simply means that the jaws must be in a closed position, for instance, to hold a single sheet of paper, in order to operate as a clip provides substantial evidence, Plasti-Clip and Faneuf assert, supports the jury's determination that the accused Curtis clip has jaws that are held yieldingly closed by the spring finger.
 
 
 76
 On the second disputed limitation, Plasti-Clip and Faneuf assert that the dual function of the invention of claim 1 of the '836 patent requiring the spring finger to serve as both a spring to close the jaws and to hold an apertured article is not an additional limitation of the claims because this "whereby" clause merely states the result of structural limitations in the claim and adds no limitation. Even if it is an additional limitation, Plasti-Clip and Faneuf argue, the Curtis clip meets the limitation because its spring finger meets the dual function as attested to by Curtis's own expert, Mr. Powell, who inserted the Curtis clip's spring finger into an aperture in an identification card. Lastly, Plasti-Clip and Faneuf assert that the Curtis clip does have a disengageable open loop because the spring finger can be opened past the flange on the opposing jaw to insert the spring finger through an apertured article as Mr. Powell showed.
 
 
 77
 In reviewing the arguments of the parties and the testimony presented to the jury, we hold that the Curtis clip does not infringe the '863 patent either literally or under the doctrine of equivalents. We need only address the lack of one of the limitations asserted by Curtis to find non-infringement. We find that there is no substantial evidence to support the jury's conclusion that the Curtis clip has a disengageable open loop.[5]
 
 
 78
 Every witness who testified or showed that the Curtis clip had a "disengageable" open loop had to force the Curtis clip to do something that it was not designed or intended to do. Mr. Crowley, the prosecuting patent attorney of the '078 patent, was questioned concerning an opinion letter that he wrote for Curtis stating that the Curtis clip was not covered by the claims of the '863 patent. In that letter, Mr. Crowley stated that the Curtis clip was not within the claims of the '863 patent because it did not have a disengageable open loop as required by claim 1. In response to questioning by Plasti-Clip and Faneuf's attorney, however, Mr. Crowley opened the spring finger of the Curtis clip to hold an apertured article only by applying considerable force. The colloquy at trial was as follows:
 
 
 79
 Q: So what you were saying was that the finger on [Curtis' clip] was not an open loop; is that right?
 
 
 80
 A: That's correct.
 
 
 81
 Q: And would you agree with me, sir, that it is possible to describe it as an open loop? ...
 
 
 82
 A: Only if you ignore the purposes of the patent. I notice that when you handed me the clip, that you had forced open and placed the resilient finger above. My recollection of the prototype I received was that you could not do that. You could not force it open like that....
 
 
 83
 Q: Okay. So you are saying that the prototype you received, you couldn't disengage the spring finger arm from the opposite member?
 
 
 84
 A: It was very difficult, just like it's very difficult to do so in connection with this defendants' exhibit.
 
 
 85
 Q: Well, can you do it, sir? Can you disengage it?
 
 
 86
 A: I will try. I don't want to break it. Yeah, you can push it. If you pull it way up, you can disengage it, except the top of the finger forms--doesn't form an open loop, an openness, because it's resting on top of the--you can see it's resting right on top of the other flange, unless you pull it up more.
 
 
 87
 Q: You can pull it up a little?
 
 
 88
 A: Yeah. Then you have to spring bias and pull it up again. That's not the function of that clip.
 
 
 89
 Mr. Powell, Curtis's expert, also testified that the spring finger of the Curtis clip could be disengaged only with considerable difficulty. Mr. Schwartz, another expert, testified while referring to the Curtis clip, "[a]nd where it says disengageable from the other member, disengageable, well, you got to fight this thing to disengage it, and when you got to fight it, this is not something that's readily disengageable and lends itself to the function which it was intended."
 
 
 90
 Even Mr. Grover, Faneuf's prosecuting patent attorney for the '863 patent, testified during his deposition that the Curtis clip did not infringe the '863 patent because "although it has a spring finger at one end, the spring finger is not designed to form a loop to hold a card, and it would be very difficult to--because of an opposing flange, you might call it, opposite the spring finger, which would interfere with the insertion of the spring finger into the card." Finally, Plasti-Clip and Faneuf's expert, Mr. Cohen, testified that the Curtis clip infringed under the doctrine of equivalents by comparing the alleged infringing clip, not to the claims of the '863 patent, but to Faneuf's garment clip. Accused devices must infringe a patent claim, not a commercial embodiment allegedly made pursuant to that patent.
 
 
 91
 Because the Curtis clip was not intended to, and indeed does not, have a readily disengageable open loop to accommodate an apertured article or its substantial equivalent, it does not infringe the '863 patent as a matter of law, either literally or under the doctrine of equivalents.
 
 C. VALIDITY OF THE '863 PATENT
 
 92
 Although we conclude that the '863 patent is not infringed, we nevertheless consider its validity. Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 26 USPQ2d 1721 (1993) (Issues of patent validity that were decided at trial require appellate review, even when patents are found not infringed upon appeal.).
 
 
 93
 Curtis attacks the validity of the Faneuf patent based on two prior art patents: U.S. Patent No. 2,931,086 to Rose (Rose patent), and U.S. Patent No. 1,892,018 to Stanton (Stanton patent), both of which claim clothespins. Curtis asserts that these two patents anticipate the Faneuf patent under 35 U.S.C. § 102 (1994), or at least render the claims obvious under 35 U.S.C. § 103 (1994).
 
 
 94
 Curtis and Judd had the burden to prove by clear and convincing evidence, that the '863 patent was invalid. Richardson v. Suzuki Motor Co., 868 F.2d 1126, 1235, 9 USPQ2d 1913, 1920 (Fed.Cir.1989). When reviewing the judgment of validity by a jury, we apply the reasonable jury/substantial evidence standard. Id. An invention is anticipated under 35 U.S.C. § 102 if every claim limitation is literally present in one prior art reference and arranged the same way as in the claim. Perkin-Elmer Corp., 732 F.2d at 894, 221 USPQ at 673. An invention is rendered obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (1994).
 
 
 95
 The Rose patent teaches a clothespin with a prestressed finger or fingers that when retained in a stressed position effectively help close the jaws of the clothespin. Rose does not teach or suggest, however, that any configuration of the fingers also creates an open loop that disengages.
 
 
 96
 The Stanton patent teaches two separate elements: a spring finger for closing the jaws and a hook element for attaching the clothespin to the line. The spring finger of the Stanton patent does not also form a disengageable open loop that will accommodate an apertured article in addition to yieldingly holding the jaws closed. In fact, the Stanton patent teaches away from such apparatus. For instance, the main object of the invention "is to provide a clothes pin which may be attached to an article of clothing following which the clothes pin may be readily attached to a clothes line without any loosening of the gripping element on the article of clothing." Stanton Patent at column 1, lines 7-13. A separate element engages the clothes and is not disturbed by the hook element that grips the line which is contrary to the structure of the '863 patent that is designed to perform two functions in the same member. Therefore, Stanton does not anticipate the claims of the '863 patent. Because neither the Rose nor Stanton patent teaches or suggests a spring finger that forms a disengageable open loop, no '863 patent claim is rendered obvious by these references.
 
 III. CONCLUSION
 
 97
 We hold as a matter of law that the '863 patent is not invalid, but is not infringed by the Curtis clip, and that Faneuf is not an inventor of the claimed invention in the '078 patent. We need not reach the remaining issues of conversion, misappropriation of an idea, or unfair competition. We also need not reach the issues raised by Faneuf on his cross-appeal.
 
 
 
 [1]
 On January 13, 1991, Curtis filed a petition for reorganization under Chapter 11 of the Bankruptcy Act. Notice of the case was sent to Plasti-Clip, but Plasti-Clip did not participate in the bankruptcy proceeding. A Curtis plan for reorganization was confirmed, effective April 1, 1993. The district court proceedings were stayed temporarily during the bankruptcy proceedings
 
 
 [2]
 Plasti-Clip and Faneuf limit their infringement claim against Curtis to post April 1, 1993, the date of the reorganization of Curtis after bankruptcy
 
 
 [3]
 The district court also found that the failure of Plasti-Clip to participate in the bankruptcy proceeding did not bar it from pursuing its common law claims relating to the '078 patent, and it upheld its taking of the willful infringement issue from the jury and its finding that the case was not exceptional for the award of attorney fees. Finally, the district court found that it would not award prejudgment interest on the state law claims because no evidence of the discounted value of such damages was argued to the jury, and it found that Faneuf and Plasti-Clip could not claim entitlement to an assignment of any foreign counterpart patents to the Curtis patent when they had not pled such an issue
 
 
 [4]
 Of course, if Faneuf cannot establish he is the sole inventor of claim 1 of the '078 patent, he is not the sole inventor of the invention as claimed in the '078 patent
 
 
 [5]
 We need not address the issue of whether the whereby clause requiring dual functionality of the spring finger is a limitation of claim 1 of the '863 patent or simply a recitation of the resulting function of a structural limitation adding nothing to the claim. Compare Texas Instruments, Inc. v. U.S. Internat'l Trade Comm., 988 F.2d 1165, 1172, 26 USPQ2d 1018, 1023 (Fed.Cir.1993) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim."), with Scheinman v. Zalkind, 112 F.2d 1017, 1019, 27 CCPA 1354, 1357 (1940) (whereby clause that sets forth a structural limitation and not merely the results achieved by the claimed structure is a positive limitation of the claim)